THE METROPOLITAN STREET RAILROAD CO. *v.* MOORE.

| 83 | 453 |
| 91 | 353 |

1. A child nine years of age who was carried several blocks, the driver (who was also conductor) knowing him to be on board, was a passenger whether he intended to pay fare or not, and was entitled to the diligence due to passengers of his age and discretion.

2. It was negligence for the driver needlessly to withdraw from the front platform, leaving the plaintiff and another boy thereon, and it was negligence not to be there ready to stop the team when the plaintiff fell or was thrown by the other boy off the platform upon the track in front of the car, the two boys engaging in a scramble to drive the horse, the reins having been left within their reach.

3. Though it is apparent that the plaintiff contributed to the injury this court cannot be certain, on the facts in evidence, that the damages were excessive, the injury being immeasurable by a court as to pain and suffering, and the damages found being $5,000.

October 11, 1889.

Street-railroads. Passengers. Infants. Negligence. Damages. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1889.

Butler Moore, by his next friend, sued the railroad company for personal injuries. According to his evidence, he was nine years old at the time of the injury.

Had been up town to procure some meal for his mother, which he intended to send home by the driver of one of defendant's cars. Got on the car and rode for some distance on the front platform; had no money to pay his fare; was not going to ride, but the driver told him to get up ; did not tell the driver he was not going to pay, or did not want to ride, but told him to stop the car, and when he stopped, got on it. After the car had proceeded some distance, the driver went inside and sat down to eat his breakfast; he did not stop the car, and left nobody to drive the mules which were pulling it. A negro boy about ten years old and plaintiff were on the front platform, and the negro started to drive; plaintiff asked to be allowed to drive; the negro said nothing, but pushed plaintiff off; he caught to the front piece of the car, and was thrown under it; two of its wheels ran over both of his legs. He was picked up by the driver, and carried home by some colored men; stayed in bed a number of weeks and suffered most excruciating pain, his legs being terribly mashed and broken. Has recovered his health, but his legs are badly bent and twisted and permanently deformed, and probably the muscles and bones will never be as strong as they otherwise would have been. He lost a year from school; he still suffers, and is likely to suffer, some pain from the injury, especially in damp weather. His capacity for earning money was reduced one fourth, according to the estimate of one of his witnesses. Plaintiff had ridden on cars, and generally paid his fare; thought he would get on and have a ride, unless the driver told him to get off, and put his bundles down on the floor of the front platform. When he stopped the car, he was going to tell the driver to carry the meal home, and the driver said, "Get up there, sore toe," but said nothing to him about paying his fare, and he had ridden on this driver's car without paying any ; was

walking along, and the driver stopped, and he got on; the driver did not ask him to pay then; other drivers on that line had carried bundles for him, but he did not think this driver ever had.    The car was going up grade at the time of the injury, dragged plaintiff six or eight feet before the first wheel struck him, eight or ten feet further before the second wheel passed over him, and went about twenty feet before it stopped; the driver jumped out, caught the brake and stopped it.    He did not know plaintiff was off, until the wheels ran over him.    From what one witness saw, the negro had not pushed plaintiff at all; witness thought plaintiff went to step off, and stepped too far.    Plaintiff testified that he did not tell anybody after he was hurt that he was tussling over the lines, and that the negro shoved or pushed him off, and that he did not remember cursing the negro or telling him that he would have his father to shoot him for pushing him off.    The car could have been stopped in two yards or less, with the brake.

The testimony for defendant tended to show that, from the effect of the injury, there was a shortening of the right leg from about a quarter to a half inch, and the left leg was considerably bowed outward, and was somewhat larger than the right leg; that a large scar had been left on the right thigh; that plaintiff seemed to walk remarkably well, limped some, but that could be avoided by an extra sole on his shoe, perhaps one thickness of leather, which would not interfere with his walk; that considering his age and the compensating power of nature, he would be practically almost as strong as anybody, and his capacity to earn a living not be materially lessened; and that the deformity would always exist, and so far as lifting and getting about were concerned, he would not be as strong as before, though the strength of the bones was not impaired.

Witnesses testified that after the plaintiff was run over, he charged the negro with having pushed him off the car, and cursed him, etc. A witness had known the driver, Robinson, to ask boys to ride with him, and to let them stand upon the front platform with him while he was driving; but he did know whether Robinson allowed them to ride free or not. He was sitting near the door of the car within reach of the brake, and the car was going slowly at the time of the injury. By the rules of defendant, the drivers drove continuously for some length of time, with no opportunity to stop and eat, and thus they were compelled to eat their meals on the cars. The negro had paid his fare. Plaintiff waved to the driver to stop the car, and ran up as though he thought it was not going to stop; the driver told him to wait and he would stop, and plaintiff got on, laid his bundles down, went inside where he stayed for a short time, and then came out on the platform. The first the driver knew of the accident he felt the car jump, and he put on the brakes at once. He had not heard a word pass between the boys. After the accident, he took a policeman and went to the little negro's house and hunted for him but could not find him. The driver did not know but that plaintiff would pay his fare, and took it for granted he would pay it; he always had paid, and never rode on this car without paying; he did not say anything to the driver about carrying the bundles and himself walking. If the driver had been standing with his lines in his hands when the boy was pushed or fell off, he did not know whether he could have stopped the car or not; after he got to the brake, he stopped it in six feet; it had already run over the boy.

After verdict for the plaintiff, a new trial was moved for and refused, and the defendant excepted.

HAYGOOD & DOUGLAS, for plaintiff in error.

JOHN T. GLENN and JOHN M. SLATON, *contra*.

BLECKLEY, Chief Justice.

1. The authorities on the subject are ample to show that the plaintiff was entitled to the rights of a passenger, and being a child only nine years of age, he had upon the driver's diligence a claim in accordance with his tender years. Wilton v. R. R. Co., 107 Mass. 108, s. c. 9 Am. R. 11 ; Pittsburg, A. and M. R. Co. v. Caldwell, 74 Pa. St. 421 ; Muelhausen v. R. R. Co., 91 Mo. 332 ; Brennan v. R. R. Co., 45 Conn. 284, s. c. 29 Am. R. 679 ; Wood on Master and Servant, (2d ed.) 636, section 319 ; Beach on Contributory Negl., sec. 93 ; East Saginaw Street R. Co. v. Bohn, and notes, 12 Am. Law Reg. (N. S.) 745.

2, 3. The other points in the case are disposed of with sufficient fulness in the head-notes.

*Judgment affirmed.*