## ERNEST WRASSE v. CITIZENS TRACTION CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 28, 1891—Decided January 4, 1892.
[To be reported.]

(*a*) In an action against a street-railway company for negligence in permitting the plaintiff, a boy of ten years, who was trespassing upon a car, to ride upon the platform thereof, the testimony of the plaintiff as to the permissive character of such riding, amounted at most to a scintilla and was contradicted by all the other including his own witnesses.

(*b*) He testified that a passenger was jolted against him and knocked him off the platform; but the testimony of the only other eye-witness of the accident, called by himself, and also his own declarations made immediately after the accident, were to the. effect that he fell under the wheels of the moving car while voluntarily attempting to jump off backward:

1. In such circumstances, to permit the plaintiff to recover was erroneous. The court should have affirmed points praying for instructions that there was no sufficient evidence that the injury to plaintiff was caused by defendant's negligence, and that the verdict must be for the defendant: Pittsburgh etc. Ry. Co. v. Caldwell, 74 Pa. 421, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM, and MITCHELL JJ.

No. 116 October Term 1891, Sup. Ct.; court below, No. 377 March Term 1889, C. P. No. 1.

On January 26, 1889, service was accepted of a summons in an action of trespass by Ernest Wrasse, by his next friend, Gustav Wrasse, against the Citizens Traction Company, to recover damages for personal injuries. Issue.

At the trial, on October 21, 1890, the following facts were shown:

On July 11, 1888, Booth & Flynn, contractors with the defendant company, were engaged in making the necessary alterations in the defendant's road to adapt it to use as a cable line, the road having been operated theretofore by means of horse power. The plaintiff, a boy ten years of age, was working on the afternoon of that day as a substitute for his brother, carrying water for the. use of the workmen employed by Booth

Statement of Facts.

& Flynn.   The company was still running horse cars over the road, and the plaintiff, while riding on one of its cars, jumped or fell off, turned under the wheels and was injured.

The plaintiff testified, in substance, that he was standing at the side of Penn Avenue, near Frankstown Avenue, with a bucket of water in his hand, when the car came along, going in the direction of the point where the men were to whom he was to supply water; that a man on the front platform called out to him, "Hello, Kid, the driver wants you," and the plaintiff went forward toward that platform with his bucket; that a man on the platform took the bucket and put it on the car, and then hoisted the plaintiff up to the platform, and two children who were on the platform drank out of the bucket; that there were four or five persons on the platform, besides the children; that the car moved on rapidly, for about half a square, when it struck a switch or something, and some man on the platform bumped against the plaintiff and caused him to fall off; that during the time he was on the car, the plaintiff was standing by the steps at the side of the platform, at one side of and behind the driver who had seen him taken on the car and saw him standing there. On cross-examination the plaintiff testified as follows:

" Q. I want to ask you whether you hadn't got on the hind platform of this particular car, while it was standing at the corner of Penn and Frankstown Avenues ?  A. Maybe I got on; but I don't know.  Q. Before that car started?  A. I can't tell the cars.  Q. Before that car started away from Frankstown Avenue, didn't the driver come back and tell you to get off ?  A. Not that I heard; nobody ever came and chased me off.  Q. Hadn't you been told by anybody to get off that car before you were hurt?  A. No, sir.  Q. By nobody?  A. I heard nobody say it.  Q. Can you tell us where it was you first got on that car, the car on which you were riding just before you were hurt?  A. I got on lots of places.  Q. When did you first get on that car that you were riding on immediately before you were hurt?  A. I don't know; if I knowed the car I could tell you better.  I don't know the cars.  Q. What I want to get at is, whereabouts was the car that you were riding on, immediately before you got hurt?   Where was that car when you first got on it that afternoon ?  A. On which car?  Q. No, where was that car in East Liberty at the time you first got on

that afternoon? A. I don't know. Q. You had been on this car on which you were riding immediately before you were hurt, before the man lifted you on, hadn't you? A. I couldn't tell you. Q. You couldn't state whether you were on or not? A. I was on lots of cars. Q. Can't you tell us whether you had been on this particular car before that time? A. No, sir; I couldn't tell you. Q. How far below Penn and Frankstown Avenues was it where you got on this car when the man lifted you on? A. I don't know what is the name of the street where I was when I got on. Q. Didn't the driver speak to you before this man lifted you on with the bucket? A. No driver chased me off. Q. But didn't the driver speak to you about getting on this car before the man lifted you on with your bucket? A. I couldn't tell."

The testimony of other witnesses called by the plaintiff, and of witnesses for the defendant, tended to show that the plaintiff had mounted the rear platform of the car, while it was standing at the corner of Penn and Frankstown Avenues before it started on its trip; that the driver ordered him off three or four times, and put him off once or twice, and he was back on the rear platform when the car started; that after having gone a short distance, it stopped to let on passengers at Collins Avenue when the plaintiff stepped down to the ground, and being called to by a passenger on the front platform who asked for a drink, plaintiff walked forward and got on that platform; that the driver ordered him off twice before the car started again, and then turned his attention to the passengers, the car having by that time become filled with people, principally women and children returning from a picnic, and the driver, being also the conductor, did not notice that the plaintiff still remained on the car. Robert White, the driver, testified for the defendant that he did not know the plaintiff was on the car at any time between the departure from Collins Avenue and the occurrence of the accident, and did not look to see whether the boy had gotten off there or not; that the distance from Collins Avenue to the place where the accident occurred, was about five hundred yards, and at the rate at which he had to drive at that time, it took between ten and fifteen minutes to travel that distance. On cross-examination, the witness testified:

Charge of Court below.

" Q. Did you look around on the front platform of the car to see who were there? A. I could see without looking around. Q. You could see who was there without looking around? A. Yes, sir. Q. Then you had no trouble to see who was on the front platform? A. I could see who was on the front platform; yes, sir. Q. All the time after you left Collins Avenue? A Yes, sir."

The only witness, besides the plaintiff, who described the manner in which the accident occurred, was Louis Hensel, called by the plaintiff. The witness testified that the plaintiff said, while the car was at Collins Avenue, that he was going " to ride down as far as the blacksmith shop," speaking loud enough for everybody on the car to hear; that when the car reached a point opposite the blacksmith shop, the plaintiff told the witness he wanted to get off there, and asked him to hold the bucket; that the witness took the bucket, and cautioned the plaintiff to be careful that he did not fall; that the plaintiff then jumped off the car backward, while it was in motion, stumbled, and was caught by his leg under the wheel. Two witnesses for the defendant testified that the plaintiff, while they were taking him home in a carriage, after his leg had been bandaged by a physician, talked of the accident and said that the driver of the car was not to blame, but the fault was his own; that he jumped off, ran against some person, and was thus thrown under the car. Portions of the testimony are quoted in the opinion of the Supreme Court, infra.

The testimony being closed, the court, COLLIER, J., charged the jury in part as follows:

The allegation of negligence is that the driver allowed this little fellow to stay on the platform of the car; not that he knew the boy was getting on, but that after he was on, he allowed him to stay there and did not stop the car or do something to put him off, knowing that he was a child of tender years. . . . . .

[The allegation is that the driver, Mr. White, a very respectable and careful-looking man, allowed this boy to stay on the platform, did not stop the car and put him off; and that, the plaintiff being a child of tender years, no negligence could be imputed to him. That proposition is disputed, and you

Charge of Court below.

will see how it has been disputed by the evidence, and it is for
you to say whether you believe the defendant's or the plaint-
iff's evidence.   It is admitted that the driver did not stop and
put him off; that is clearly shown by some of the witnesses, if
you believe them, which is for you and not for the court.] [6]

[Some of the testimony tends to show that he had put this boy
off from the rear platform two or three times, and told him
not to get on, and that when he again found him on the plat-
form he told him again to get off; and when they stopped at
Collins Avenue he told him there to get off; and then went on,
supposing the boy was off the car, and he did not notice him
from that time until the boy was hurt.   If that was the case,
what more could the driver do?   Was it not stopping at a
regular stopping place, seeing the boy there and telling him to
get off; and then going on and not seeing him, supposing, of
course, he was off the car?   The testimony on the other side
contradicts that; the boy himself tells a different story, and
you will say which is correct.] [7]

It was the duty of the driver to stop and put the boy off;
either stopping for the purpose of putting him off, or at a
place where he stopped for people to get on or off, telling
him and giving him a chance to get off, and seeing that he
got off, or being satisfied that he was off.   If you find that
was the case, then the driver could not do any more, unless he
stopped the car and took the boy by the arm and put him off,
which I do not think the law means.   [If you find that the boy's
story is the correct one, then you would find in favor of the
plaintiff upon that point.] [8]   But there are other things in the
case for your consideration.   If you should find that point in
favor of the plaintiff, the next question is, was the boy in fault?
He was a boy of tender years, and the general rule is that you
cannot impute negligence to a child of tender years. . . . . . If
he undertook to jump off, you will say whether, under all the
circumstances, taking into account his age, it was carelessness on
his part to do that; or whether if somebody jumped against him
and he was thrown under the wheels, the company should be
held liable for that.   You are to judge of that, under all the cir-
cumstances, remembering that, he being ten years old, the pre-
sumption of law is in his favor; and it must appear from the
evidence that the child was of that knowledge, knew the cir-

cumstances and knew enough to know that he ought not to have gotten off in that way. . . . . . If it were the case of a man, there would not be any trouble about it, I would be compelled to enter a judgment of nonsuit; but, being a boy, you are to determine whether, under all the circumstances, he knew enough to know that he ought not to do that. . . . .

The defendant requests the court to charge:

1. There is no proof that the injuries complained of were caused by the defendant's negligence, and the verdict must be for the defendant.

Answer: Refused.[1]

2. There is no sufficient proof that the injuries complained of were caused by the defendant's negligence, and the verdict must be for the defendant.

Answer: Refused.[2]

3. That, under the uncontradicted evidence, Ernest Wrasse was a trespasser on defendant's car, was where under the circumstances he had no right to be; the defendant company owed him no duty, and if liable at all, would be liable only for a wanton or intentional injury done him, and of this there is no evidence and the verdict must be for the defendant.

Answer: Refused.[3]

4. Under the uncontradicted evidence, it does not appear that the driver of the defendant company even knew that the plaintiff was on the car at the time the accident occurred, and the verdict must be for the defendant.

Answer: Refused.[4]

5. Under all the evidence in this case, plaintiff cannot recover, and the verdict must be for the defendant.

Answer: Refused.[5]

—The jury returned a verdict for the plaintiff for $2,500. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal assigning for error:

1-5. The answers to the defendant's points.[1 to 5]

6-8. The parts of the charge embraced in [ ] [6 to 8]

*Mr. George C. Wilson* (with him *Mr. F. M. Magee*), for the appellant:

1. Outside the story of the boy himself, the united testimony of all the witnesses, including those called by the plaintiff, is

Arguments.

that before the car moved from the corner of Frankstown Avenue, the driver not only told the plaintiff three or four times to get off the car, but actually put him off once or twice. The plaintiff denies this only in a qualified way. It is, then, the uncontradicted evidence that the plaintiff persisted in getting on the car in disregard of repeated warnings of the driver not to do so; that at the time of the accident his presence was unknown to the driver, and that the accident was chargeable to his own default.

2. The court below ruled the case on the authority of Pittsburgh Ry. Co. v. Caldwell, 74 Pa. 421. But, in that case, there was undisputed evidence of a continuous permissive riding by a child on the front platform, and the decision was put upon that ground: Hestonville R. Co. v. Kelley, 102 Pa. 119. Testing this driver's conduct by the rule laid down in the Caldwell case, what more could he have done than he did do? Was he bound to know that the plaintiff was on the car after it left Collins Avenue? He had his duties to attend to; the condition of the road rendered special attention to his horses necessary, and his car was filled with women and children. There was no sufficient evidence of negligence: Hestonville R. Co. v. Kelley, 102 Pa. 115; Woodbridge v. Railroad Co., 105 Pa. 460; Sandford v. Railroad Co., 136 Pa. 84; Butler v. Railway Co., 139 Pa. 195; Hestonville Ry. Co. v. Connell, 88 Pa. 520.

*Mr. Thomas J. Keenan* (with him *Mr. R. S. Sill*), for the appellee:

1. There was sufficient proof of defendant's negligence. The negligence complained of was allowing the plaintiff to be placed on the front platform of the car at Collins Avenue, and to ride on the platform from that point down to the blacksmith shop, a distance of five hundred yards, the ride occupying fifteen minutes of time. During that period the driver and the boy stood together on the platform. The driver knew the boy was there, for he says he could see who were on the front platform all the time after leaving Collins Avenue, and the boy had said, loud enough for all on the car to hear, that he intended to ride down to the blacksmith shop. At all events, it was the driver's duty to know what he had the opportunity to know and the law as-

Opinion of the Court.

sumes that he did know: Penna. R. Co. v. Henderson, 43 Pa. 453.

2. That it is negligence to permit children to ride on the front platform of a street car, is well settled: Pittsburgh Ry. Co. v. Caldwell, 74 Pa. 421 ; Phila. Ry. Co. v. Hassard, 75 Pa. 376 ; Nagle v. Railroad Co., 88 Pa. 38 ; Biddle v. Railway Co., 112 Pa. 554 ; Sandford v. Railroad Co., 136 Pa. 92. And it is immaterial what had occurred on the rear platform, at the corner of Frankstown Avenue. None of the cases cited for the defendant bear against the plaintiff ; they are rather in his favor. The doctrine of the defendant's third point, as applied to little children, is too brutal to merit consideration. Such a style of defence is effectually disposed of in Biddle v. Railway Co., 112 Pa. 551. Even if the plaintiff were a trespasser, as he was invited and placed on the platform with the driver's consent, the utmost care was due to him ; see cases cited in Biddle v. Railway Co., supra.

OPINION, MR. CHIEF JUSTICE PAXSON :

The plaintiff, a boy of about ten years of age, was injured by the car of the defendant company, and this suit was brought in the court below by his father, as his next friend, to recover damages for such injury. The only specification of error which we think it necessary to discuss, is the second, in which it is alleged that the court erred in refusing the defendant's second point. The point is as follows : " There is no sufficient proof that the injuries complained of were caused by the defendant's negligence, and the verdict must be for the defendant." This point raises the whole issue of fact in the case, and renders necessary a consideration of the evidence.

The following, briefly stated, is the plaintiff's account of the transaction as detailed by him on the witness stand :

On July 11, 1888, he was carrying water for Booth & Flynn, contractors, near Hiland Avenue, East Liberty. While standing there, a car of the defendant company passed, and he heard some one say, " Hello, Kid, the driver wants you ; " whereupon he went over to the car with his bucket of water. Then some man took his bucket and put it on the car, after which the same man took the boy under the arm, and lifted him on the car on the front platform. There were several other persons'

on 'the platform at the time, including two children, who took a drink of water out of his bucket. After he got on the platform, the car moved on fast for about half a square, when it came· to a switch which made a jolt, and some man tumbled against or bumped him, and he fell off; the wheel ran over his leg, and injured it so that it had to be amputated. He was repeatedly asked whether he had been told to get off by the driver before the accident occurred, and he either denied it, or said he did not know. He further stated that the driver saw him when he was taken on the car. This was his statement when on the stand. Two witnesses, Otto Shonert and John F. Lawler, called by the defendant, testified that when the boy was taken home, and when he was resting and free from pain, he said, in answer to an inquiry by the witness how the accident occurred, that it was not the fault of the driver, that it was his own fault; that "he jumped off, and ran against some person, and it throwed him under." There was no attempt to contradict this testimony by the plaintiff himself, or by any one else. That this statement, made by the boy almost immediately after the accident, was the true version of the matter, appears conclusively by the evidence of all the other witnesses who were examined and had any knowledge of the matter, including those of the plaintiff himself.

Confining ourselves to the witnesses called by the plaintiff, it appears that before the car moved from the corner of Penn and Frankstown Avenues, and while it stood still at that place, the driver not only told the plaintiff three or four times to get off the car, but once or twice caught hold of him and actually put him off. Louis Hensel, his own witness, says the driver chased him off three times. This witness was on the front platform at the time the accident occurred, and thus describes it: " He asked me to hold his bucket, and I held his bucket. He says, I want to get off here. I says, Look out so you don't fall, I says that, and he says, I am going to get off here, will you please hold my bucket? I says, Yes, I will hold your bucket, and he jumped off, and jumped off backwards and stumbled, and by turning again he got his leg right under the car." The same witness testified that the boy was on the rear platform, when the driver repeatedly ordered him off at Penn and Frankstown Avenues. He further stated that when the car started,

he (witness) told him to get off. The plaintiff replied : " I am going to ride down as far as the blacksmith shop, and then I am going to get off. I want to fill my bucket again." Continuing, the witness says : " The driver says the same thing, Get off there ! He says, I am going to ride down as far as the blacksmith shop ; and while the driver stopped to let some passengers on, he thought the boy was off, and drove on ; never looked at the boy. I don't think he knew the boy was on." And again he says : " I don't think the driver knew ; the driver turned around and looked after his passengers." There was need that he should do so. His car was crowded, mostly with women and children, and the driver could not give his whole attention, there being no conductor, to a boy who had repeatedly within a few minutes been not only warned off but put off the car. There is no reliable evidence that the driver knew the boy was on the car when the accident occurred. Such evidence as there was was inferential merely. The boy was told to get off by the driver, when the car stopped to take on passengers, and the driver may well have supposed he had obeyed the order, when he again started the car. It is needless to further repeat testimony.

Where was the negligence ? " The negligence complained of was allowing the plaintiff to be placed on the front platform of the car at Collins Avenue, and to ride on that platform from that avenue down to the blacksmith shop where he was hurt, a distance of five hundred yards occupying on the way fifteen minutes of time." See plaintiff's argument at page 5. Pittsburgh Ry. Co. v. Caldwell, 74 Pa. 421, was cited as conclusive upon this question. But the fact is overlooked that the cases are as wide apart as the poles, upon the facts. There, the plaintiff was a child of five years of age, and was permitted by the conductor to ride upon the front platform. The child, of its own motion, jumped off and was injured ; and this court very properly held that it was negligence on the part of the driver to allow a child of such tender years to ride on the platform. Here a boy of ten years of age—and many boys of that age know more about getting on and off a horse car than men of seventy—was stealing a ride, and had been repeatedly warned off and put off by the driver. He appeared to have done all that could be expected, in view of the crowded condition of

his car. He had duties to perform to other passengers, and there is not even a scintilla of evidence that he consented to the boy being on the car. The evidence of the plaintiff amounts at most to a scintilla. He is contradicted by his own witnesses and by himself. To allow him to recover under such circumstances would be a mockery of justice. The defendant's second and fifth points should have been affirmed.

Judgment reversed.

On March 23, 1892, plaintiff's counsel filed a petition calling attention to certain testimony claimed to establish negligence on the part of the driver of the car; and, averring that the record still remained in the Supreme Court, and that, while under § 2, act of March 27, 1713, P. L. 76, (see Fries v. Railroad Co., 98 Pa. 142,) plaintiff might bring another action within one year from date of the judgment of reversal, yet considerable costs had accrued on the case, which should abide the result of final litigation, prayed for a new venire.

On March 28, 1892, the motion for a venire de novo was refused: Per CURIAM.