WYNN *v.* THE CITY & SUBURBAN RAILWAY OF SAVANNAH.

1. Where, during the progress of a trial, newspaper reports thereof are published containing comments favorable to one side, which papers are likely to be read by jurors trying the case, it is not error for the judge to express in the presence of the jury his disapprobation of such articles and his intention to deal with the persons responsible therefor, nor to caution the jury not to be influenced thereby in making their verdict.

2. When, during a trial, the plaintiff (a child) is on the stand testifying as a witness, and the court has apparently good reason to believe that the child's mother, by nods or other motions of the head, is endeavoring to direct or influence the child's testimony,

it is not improper for the court, without expressing any opinion as to the mother's purpose or motive, to simply call counsel's attention to the matter, it appearing also that the court, upon being informed that the mother was suffering from a nervous affection, stated to the jury that no wrong inference should be drawn by them from the movements of her head.

3. When, during the progress of a trial, the jurors, by leave of the court, are allowed to go to their homes, and one of them, while thus separated from his fellows, has a conversation with an important witness for the plaintiff, in the course of which the juror asks, and the witness answers, many questions about the case, and the latter points out and describes to the juror the place of the alleged injury for which plaintiff sued, such conduct is grossly improper both on the part of the juror and the witness, but it does not require a new trial at the instance of the plaintiff, it not appearing that he and his counsel were ignorant of these facts until after the trial had ended.

4. The conductor of a street car may testify as to his recollection of the number of passengers upon his car at a given time and place, notwithstanding he kept a slip " taken from the register on the car, and left at the company's office, which showed the number of passengers carried on that trip."

5. Where a boy eleven years of age, without the intention of paying fare but with the purpose of stealing a ride, boards a passing street-car and secretes himself from observation so as to avoid detection, he is in law a mere trespasser, unless his presence on the car be actually known and assented to, either directly or by implication, by the driver or conductor. Assent to the boy's riding upon the car free will not arise by implication from the mere fact that the driver discovered him, knew of his presence and made no demand upon him for fare, the driver being charged simply with the duty of properly managing his team, and neither required nor authorized to collect the fares or attend to the wants of passengers, a conductor having been provided by the street railway company for these purposes.

6. While the degree of care which a street railway company owes to a trespasser upon its cars is not more than ordinary or reasonable diligence, yet, where such trespasser is a child of tender years, due regard should be paid to the known indiscretion of childhood, and the inability of children to exercise proper precautions for their own safety. The duty resting upon the company to employ the proper precautions to avoid injury to children entering its cars, would comprehend the exercise of reasonable diligence to guard and shield from danger a child not of the age of discretion to understand and appreciate the peril of riding in an unsafe and exposed position. Accordingly, it would generally be negligence to allow such a child to ride upon the steps of the front platform

when his presence in a situation thus exposed to danger is actually known, or the circumstances are such as would make failure to note his peril palpable neglect and inattention to duty on the part of those having the control and managment of the car.

7. Whether a boy eleven years of age has sufficient capacity to understand and appreciate the danger of riding in an unsafe and hazardous position on a street-car, and could, by the exercise of that degree of care and diligence to be expected of a boy of his years and experience, have avoided an injury to himself while thus exposed to peril occasioned by the too rapid driving of the car around a curve, is a question for the determination of the jury under proper instructions from the court.

8. The finding by the jury is sustained by the great preponderance of the evidence; and not only is the newly discovered evidence merely cumulative, but no showing of diligence in its procurement is made. None of the irregularities complained of as having occurred during the trial are such as would vitiate the verdict; and although the charge of the court is not entirely free from error, and should, perhaps, in some respects have been more full and complete, it fairly submitted to the jury the real merits of this particular case, and presents no error which would require the granting of a new trial.

March 20, 1893. Argued at the last term.

Before Judge HARDEN. City court of Savannah. November term, 1891.

Action of Wynn by next friend, for damages from personal injuries. The verdict was for the defendant, and the plaintiff's motion for a new trial was overruled. For the other material facts see the decision.

R. R. RICHARDS and W. R. LEAKEN, for plaintiff.

G. A. MERCER & SON and T. S. MORGAN, Jr., for defendant.

LUMPKIN, Justice.

1. With wise regard for the rights of the people, the framers of our constitution provided that no law should ever be passed to curtail or restrain the liberty of the press, and guaranteed that every person might publish his sentiments on all subjects, being responsible, however, for the abuse of that liberty. It is, therefore, proper and becoming that the courts and all others

should recognize the constitutional right of newspapers to deal with all matters of public interest, and it is equally proper and becoming that newspapers should confine themselves within the limits prescribed by the constitution, and not abuse the liberty given them by that instrument by interfering in any manner with the business of the courts. A newspaper may at any time, with perfect propriety, fairly and truly report all proceedings which have already taken place in the courts of the country, but no newspaper has a right, while a case is under investigation, to comment upon its merits, or to express in its columns any opinion as to questions of fact involved; and this is especially true when what is published will most probably fall under the eye of jurors actually engaged in trying the case, and who may be more or less affected or influenced by the publication. Under our system, the judges have nothing to do with deciding disputed issues of fact, but these are matters left entirely to the juries. It follows that if a judge should read newspaper articles about a pending case, it could have no effect upon the verdict to be rendered, for he has nothing to do with the making of the verdict so far as the facts are concerned. It is quite different, however, with jurors, for if they should derive any impression of a case from newspaper publications, or through other sources of information outside of the evidence, it is impossible to know what effect may thus be had upon their finding. Hence it is that no attorney, party, officer of court, or any other person, is allowed to communicate with a juror about a pending case while he is charged with the consideration and determination of it. Newspapers have no more right to interfere in matters of this sort than any other person, and it is of the utmost importance that they should refrain from so doing. Whenever a newspaper, whether wilfully or otherwise, violates this plain and manifest rule of pro-

priety, and the fact comes to the knowledge of the presiding judge, it is not only his right, but his duty, to call the attention of the jury thereto, express his unqualified disapprobation of such conduct, and caution the jury not to be influenced by the publication in question. Nor is there any error in informing the jury of his intention to summarily deal with the persons who have thus placed themselves in contempt of the court.

2. During the trial, the plaintiff, a child, was on the stand testifying as a witness, his mother being present. The presiding judge, for reasons which were apparently well founded, thought he discovered the mother endeavoring, by nods or other motions of her head, to direct or influence the child's testimony, and called the attention of counsel to the matter, without, however, expressing any opinion as to the mother's purpose or motive. Afterwards, upon being informed that she was suffering from a nervous affection, which would account for these motions, he stated to the jury that no wrong inference should be drawn therefrom. We are unable to perceive any error in what the court did as to the matter in question. If it was plain and manifest that any person was prompting, or in any other manner endeavoring to interfere with a witness on the stand with a view to giving shape or direction to his testimony, it would be the duty of the presiding judge not only to call the attention of counsel to the same, but to peremptorily put a stop to such reprehensible conduct; and where there is apparently good reason to suspect that such a thing is taking place, it is certainly not improper for the court to take the proper steps to ascertain the truth, especially when this is done in such a manner as not to prejudice the rights of either party to the case.

3. Nothing can be more grossly improper and unbecoming than for a juror, who has been allowed to separate from his fellows, to converse with a witness

about the facts of the case. There is no excuse whatever for any such conduct on the part of the juror or the witness. The misbehavior of the juror is worse' than that of the witness, especially when the latter is a mere youth, as in the present case. Such misconduct, in a case at all doubtful, would require the granting of a new trial at the instance of the losing party, if he made it appear that he and his counsel were ignorant of the facts until after the trial had ended. Not only was there a failure to make this appear in the case with which we are now dealing, however, but there is very strong reason for the inference that the plaintiff and his counsel knew of the irregularity mentioned, before the verdict they seek to set aside was rendered. Whether this be true or not, before the plaintiff would be entitled to a new trial on this ground, it would be incumbent upon him to show affirmatively that he did not, with knowledge of the irregularity, take the chances of obtaining a verdict in his favor.

4. The slip taken from the register on a street car, showing the number of passengers carried on a given trip, and which the conductor was required to leave at the company's office, is not the best evidence, nor, indeed, any evidence at all, of the number of passengers on his car at any particular time or place. Consequently, there was no error in allowing the conductor to state, without producing his slip, his recollection of the number of passengers he had when the injury to the plaintiff occurred.

5. The railway company relied mainly upon the defence that the plaintiff was not, as he claimed, a passenger, but was a mere trespasser who had gotten upon the car with no intention of paying fare, but with the purpose of stealing a ride. Much evidence was introduced in support of this contention. Mr. Shuman, one of the conductors of the company, positively identified the

plaintiff as a boy who had constantly been in the habit of jumping upon his car, giving him serious trouble and vexation.  If the conductor was on the rear platform, this boy would get on in front; and when driven off the front steps, he would immediately again jump on in the rear; and would sometimes throw rocks at the car and dirt at the conductor.  Introduced as a witness in rebuttal, the plaintiff flatly denied ever having thrown dirt at Mr. Shuman, or anything at his car, or that Mr. Shuman had ever begged him not to jump on the car.  Yet, upon his cross-examination, the plaintiff admitted that he had previously been in the habit of jumping upon the company's cars; that he knew Mr. Shuman, and had jumped upon his car without his permission and without paying fare.

It was therefore incumbent upon the court to present the issue thus made to the jury.  This he did with perfect fairness to the plaintiff, expressly instructing them that if the plaintiff, as he claimed, got upon the car with the expectation of paying fare, and had not paid it simply because it had not been demanded of him, then his status and rights as a passenger would be exactly the same as though payment had actually been made, the plaintiff being under no obligation to seek the conductor and tender him fare.  On the other hand, the court correctly instructed the jury that should they believe the plaintiff boarded the car with no intention of paying fare, and endeavored to secrete himself from observation so as to avoid detection, he would be a mere trespasser, unless his presence was actually known to the company's servants and assented to by them either directly or by implication.  The authorities are numerous to this effect, and we fail to detect any error in this statement of the law. · We think, furthermore, it was entirely proper to add that the jury would not be authorized to infer any implied assent to the plaintiff's

remaining upon the car from the mere fact that the
driver may have known of his presence. The reasons
given by the trial judge in this direction are convincing.
Evidence had been introduced to the effect that the
driver was charged merely with the duty of managing
his team, and was neither required nor authorized to
collect fares or look after passengers, a conductor having
been provided by the company whose express duty it
was to attend to such matters. This being so, it is
manifest the driver would have no means of knowing
whether a particular person who boarded the car really
did or did not expect to pay fare when demand was
made upon him for the same; and for the driver to
make inquiry in this regard, would be an entirely un-
authorized assumption of duty. Certainly, under such
circumstances, it could not be seriously contended that
assent to the plaintiff's riding upon the car free of charge
would arise by implication, merely because the driver
may have known of this boy's presence, made no demand
upon him for fare, nor took any measures to ascertain
whether he intended to pay fare when demanded by the
conductor or not. See Muelhausen *v.* Railroad, 28 Am.
& Eng. R. R. Cas. 157, in which it was ruled that such
knowledge by a driver would not be sufficient to give
a trespasser the rights of a passenger, when unaccom-
panied by any consent to remain. Indeed, whatever
may be the duty of the company to a trespasser, we do
not think he can consistently claim the superior pro-
tection to which a passenger is entitled, in the entire
absence of anything from which it may reasonably be
inferred that the company's servants not only knew of
his presence, but really consented to his remaining on
the car and riding free. In the present case there was
nothing from which the jury could possibly imply such
assent, express or otherwise, on the part of either the
driver or conductor. Nor did the plaintiff rest his case

upon this ground. On the contrary, he maintained throughout the whole trial that he was in no sense a trespasser, but boarded the car as a passenger upon the invitation of an elder companion, who offered to pay his fare, and was ready and willing to do so upon demand made by the conductor. The jury found against him upon this issue, and we are not prepared to say that their finding was not in perfect accord with the truth.

6. While the degree of care which a street railway company owes to a trespasser upon its cars can never be more than ordinary and reasonable diligence, yet, where such trespasser is a child of tender years, due regard should be paid to the known indiscretion of childhood, and the inability of children ordinarily to properly provide for their own safety. It is the duty of the company to employ proper precautions to avoid injury to children entering its cars; and this duty would comprehend the exercise of reasonable diligence to guard and shield from danger a child not of the age of discretion to understand and appreciate the peril of riding in an unsafe and exposed position. Booth, Street Ry. Law, §351. Accordingly, in the absence of peculiar facts and circumstances which would excuse failure to exercise such precautions, it would be negligence to allow such a child to ride upon the steps of the front platform when his presence in a situation thus exposed to danger is actually known. And indeed, to be entirely accurate, mere ignorance of the child's exposed position would not, in every instance, relieve the company from liability; for we can easily conceive of a case where failure to note the child's peril would in itself be gross and palpable neglect and inattention to duty on the part of those having the control and management of the car. It is proper to add, however, that the rule herein announced should be construed in its fair and legitimate

sense, and applied wisely and justly. It cannot be required of a driver or conductor that he shall maintain a constant and unremitting watch over the movements of a child upon his car, and devote to such child his entire attention, to the exclusion of other and equally pressing and important duties devolving upon him. Booth, St. Ry. Law, §351; Sandford v. Railroad, 136 Pa. St. 84. All that can, or should be, expected of the company's servants is that they shall exercise that degree of diligence which would be observed by a reasonably prudent and cautious man under similar circumstances. Sandford v. Railroad, *Id.* 92. In all cases wherein it has appeared that neglect of duty in this respect was unquestionably palpable and inexcusable, the railroad company has been held liable. *Metropolitan Street Railroad* v. *Moore,* 83 *Ga.* 453; Pittsburg &c. Railway v. Caldwell, 74 Pa. St. 421; Breman v. Railroad, 45 Conn. 284; Wilton v. Railroad, 107 Mass. 108; East Saginaw Street Railway v. Bohn, 27 Mich. 503, 12 Am. Law Reg. 754. The opinion in the case last cited was delivered by Justice Cooley, the now eminent text-book writer, and is an able and comprehensive exposition of the law upon the subject with which we are now dealing. But care has been taken that this rule should not operate harshly or oppressively; and where the company has introduced proof of special facts and circumstances explaining and justifying the omission of its servants to warn and compel a heedless little one to occupy a place secure from danger, the courts have uniformly afforded to the company ample protection against unjust and unauthorized verdicts. Hestonville, &c. Railroad v. Kelly, (Pa.) 11 Am. & Eng. R. R. Cas. 123; Clutzbeher v. Railway, 1 Atl. Rep. 597; Butler v. Railway, 139 Pa. St. 84; Wrasse v. Citizens Traction Co., 23 Atl. Rep. 345.

In the present case, the negligence of the company,

v 91-23

upon which the plaintiff seems to have entirely relied. for a recovery, was the alleged too rapid driving of the car around a curve. It was not shown upon the trial that either the driver or conductor had any actual knowledge of this boy's presence, or by the exercise of proper diligence could have been so informed. The only evidence from which knowledge on the part of either could possibly be inferred was the testimony of the witness Dudley, the boy who accompanied the plaintiff. He says : " I seen the driver ; I could not see him very well, he was so small; there was nothing there to prevent his seeing us ; we were standing right there, and he was right there." The boys were on the opposite side of the platform from that occupied by the driver. Both say the platform was crowded, a number of men standing between them and the driver ; Dudley estimates the number at nine, the plaintiff at a dozen and a half. They also agree as to the circumstances under which they boarded the car. They were returning home, late at night, when the street-car came along ; they had already passed York street, and boarded the car as it was running slowly between that and the next cross-street, without any notice to either the driver or conductor. The plaintiff says, "I did not call the conductor to stop· the car, or make any effort to. Tried to get on the rear platform, but there was such a crowd, couldn't." Being unable to get on in the rear, the boys ran along the side of the car and jumped on the front platform, and had ridden but a short distance when they were thrown off by a jerk of the car in going around a curve. This is the sum and substance of the evidence introduced by the plaintiff bearing on this question. It was not· claimed that the conductor saw the boys get on, or afterwards discovered them, or had any reason to suspect their presence. Had they stood on the street corner ready to board the car, and at once jumped on the front·

platform as the car passed, the inference might possibly have arisen that the driver saw them; but under the circumstances recited by the plaintiff, there was nothing which would naturally attract the driver's attention to the fact that they desired to become passengers, or had in fact boarded the car. Nor is the plaintiff's case aided by any facts elicited by the examination of the defendant's witnesses. On the contrary, both the driver and the conductor emphatically deny any knowledge of the plaintiff's presence prior to the accident; and in almost every material particular the testimony given by the plaintiff and his companion is flatly contradicted. According to the theory of the conductor, they must have gotten on the car immediately after it left a switch where he stopped to receive "transfers" from another car, some considerable distance below York street, and only 147 feet from the place of the accident. He had, but a short time before reaching the switch, just finished collecting fares, and there were then on the front platform only three passengers, two men and a colored boy, the last of whom he compelled to go inside. As he got off his car at the switch, the conductor saw two boys run around the end of another car standing there; but although, as he asserts, he endeavored to ascertain whether they had boarded his car as it started again, he failed to discover them. He gave his immediate attention to collecting the transfer tickets of those who had gotten on the rear platform, and had just started to go through the car to the front platform when, as he presumes, the boys must have seen him coming, and jumped off to avoid the payment of fare. As to the number of men on the front platform, the driver agrees with the conductor, and says he certainly would have noticed the boys had they stood upon the platform as they assert, and can account for his failure to discover them only upon the assumption that they must have secreted themselves

from his view by swinging back along the side of the car. This both he and other witnesses explained could be done by placing one foot on the lower step, catching hold of the "grab-rail" on the side of the car, and leaning backward. If another witness offered by the defendant is to be credited, the correctness of this supposition on the part of the driver is established. The conductor of a car which was following immediately in the rear of the one in question testified positively to having seen a boy in the position indicated, just after the cars had left the switch and but a moment before the accident. He says: "I was on the front platform of my car, on the left-hand side. I could see the West Broad street car plainly. I looked at the car, and saw a little boy swinging hold to the railing on the side, leaning back that way, with his foot on the steps; and he jumped off, and as the car turned [the curve], I heard he was hurt." On the cross-examination of this witness, he reiterated, substantially but more in detail, what is above quoted. Numerous other witnesses were introduced; but in the great mass of testimony adduced at the trial, there is not a single circumstance which would indicate that there was any negligence whatever on the part of either the driver or conductor in failing to discover the plaintiff's peril and taking proper precautions to avert the grievous disaster which ensued.

In presenting to the jury the issues to be determined, the trial judge evidently overlooked this aspect of the case as constituting a separate and distinct ground of liability. While he instructed the jury in general terms to " see whether or not the company exercised that amount of diligence which this child had the right to expect from this company," he did not specifically call their attention to the fact that in the case of a child of tender years, the exercise of ordinary and reasonable care would comprehend greater diligence than that to which

an adult would be entitled; nor did he expressly direct them to consider whether, under the facts and circumstances in evidence, it was negligence on the part of the company to allow a child of the plaintiff's age to ride in an exposed position on the front platform of the car. But, as before stated, if indeed this ground of liability was not entirely ignored by counsel for the plaintiff, it is clear, for aught that appears in the record, it was not relied on, or insisted upon as a basis for recovery. Be this as it may, it is manifest the plaintiff could not have recovered upon this branch of his case, when the facts above recited are given their proper significance. Nor do we think this issue was presented with sufficient clearness to demand that the court, on his own motion and without request, should specially charge thereon. Certainly, under the circumstances, failure to do so would not authorize the grant of a new trial. The plaintiff rested his entire case upon the ground that he was a *bona fide* passenger on the company's car, and as such could recover for even slight negligence on the part of the company's servants in driving too rapidly around the curve. This contention the court presented to the jury more favorably to him than he had any right to demand or expect. Granting the plaintiff was a passenger, he would have no right to recover because of a slight jerk from which he would have suffered no harm had he been occupying a position inside the car, unless there was concurring negligence in allowing him to remain in an unsafe position on the platform. Ordinarily, a street railway company is bound to run its cars with such caution only as will insure the safety of those occupying positions provided for passengers and pointed out to them as safe; and to render the company liable to one injured while standing on the platform, circumstances must be shown from which may be implied an undertaking on the part of the company, despite the

increased risk, still to carry such passenger with safety. Booth, St. Ry. Law, §339.

The court charged the jury, in effect,.that should they believe the plaintiff, while a passenger, and without fault on his part, was thrown off the platform by a jerk of the car, even though the negligence of the company in driving at an unusual speed was slight, he would be entitled to recover. This instruction, we think, was more favorable to the plaintiff than the evidence warranted. According to his own testimony, the plaintiff, at a late hour in the night, boarded the car between two street crossings, while the car was in motion, and without giving notice of his intention to do so. There is no evidence to show that the company's servants knew he had boarded the car, but there is much evidence to establish the fact that his presence on the car in a situation of peril was entirely unknown to them, and if this be true, they certainly could not have assented thereto.

7. It was urged by the railway company that the plaintiff was himself grossly negligent in voluntarily riding in an open and exposed position on the front platform, a situation which the company contended was obviously hazardous and unsafe. Under the system of practice which obtains in this State, it cannot, as matter of law, be said that a child between the ages of ten and fourteen years would or would not, under such circumstances, be chargeable with contributory negligence. To those only who have arrived at years of discretion does the law impute negligence. The plaintiff was, at the time of the injury, eleven years of age. Therefore, whether or not he had sufficient capacity to understand and appreciate the peril of thus exposing himself to danger, was a question, not of law, but of fact to be determined by the jury under proper instructions from the court. *Western & Atlantic Railroad* v. *Young,* 81 *Ga.* 397 ; *Rhodes* v. *Georgia Railroad,* 84

*Ga.* 320; *Wynn* v. *Conklin*, 86 *Ga.* 40. And see, Saare v. Union Railway, 20 Mo. App. 211; East Saginaw Railway v. Bohn, 27 Mich. 503; Philadelphia &c. Railway v. Hassard, 75 Pa. St. 367; Booth, Street Railway Law, §385, citing numerous cases. The charge of the court upon this branch of the case was not only free from error, but was unusually clear and comprehensive, and entirely fair and impartial. It is the peculiar province of the jury to settle questions of this nature; and although, in the present case, they may have believed the company guilty of slight negligence, yet, as they also doubtless believed the boy could, by exercising that degree of ordinary care of which he was capable, have avoided being injured, we do not feel authorized to disturb their verdict. *Branham* v. *Central Railroad*, 78 *Ga.* 35.

8. The motion for a new trial in this case contained many grounds, the most material of which have already been specially considered. The remaining grounds are indicated in the last head-note, and need not be discussed separately or in detail. None of them are such as will require a new trial; many of them involve questions of but trivial importance, and which have often heretofore been passed upon by this court.

After a careful and laborious examination and study of the entire record, we are satisfied the verdict could not properly have been otherwise. Indeed, it is quite improbable that a jury would make a wrong finding in favor of a corporation against a child of tender years who has been so sadly maimed for life.

There are, perhaps, some slight verbal inaccuracies in the charge of the court, and it might, as indicated in a preceding division of this opinion, have been in some respects more full and complete. It is proper to remark, however, that the court was not requested to instruct the jury more in detail; and as to such inaccuracies as

we have incidentally discovered, and to which reference is here made, none of the same are specially pointed out or assigned as erroneous.    The assignment of error upon the charges excepted to is general merely, involving only objections to the principles therein announced, and the questions thus made we have separately considered and disposed of.    As a whole, the charge of the court fairly and impartially submitted to the jury the merits of the case on trial, and no good reason is shown for protracting this litigation, which has already ended in a manner entirely consistent with the real justice of the matter in controversy.                    *Judgment affirmed.*