St. Louis Southwestern Railway Company v. G. W.
Abernathy et al.

Decided March 8, 1902.

**1.—Railway Company—Injury to Child—Discretion—Contributory Negligence.**

Where a boy 10 years old and of average intelligence was told not to go about a work train, as he might get killed or hurt, but was not told as to how he might be killed or hurt, the issue as to his capacity and intelligence to comprehend and appreciate the danger was for the jury, and a finding to the effect that he was not guilty of contributory negligence in going about the train, by which he was run over and killed, is sustained.

**2.—Same—Peril Not Discovered.**

Where children were on and about a work train so frequently that a person of ordinary prudence would have apprehended danger to them, it was immaterial that the employes in charge thereof did not know that plaintiff's child was on it in a dangerous position, since they were guilty of negligence in failing to use care to prevent him going thereon.

Appeal from Navarro.   Tried below before Hon. L. B. Cobb.

*Frost, Neblett & Blanding* and *E. B. Perkins,* for appellant.

*Simkins & Mays,* for appellee.

RAINEY, Chief Justice.—Abernathy and wife sued appellant for damages caused to them by the death of their 10 year old son, alleged to have resulted from the negligence of the defendant's employes in the operation of its work train.

Appellant plead a general denial and contributory negligence on the part of both plaintiffs and their son.

*Conclusions of Fact.*—Appellees' child, a boy 10 years of age, was run over and killed by appellant's work train on the 17th day of November, 1899.   The railroad of appellant runs through the corporate limits of Corsicana and did at the time of the death of the deceased, Howard Abernathy.   At the time of the injury appellant was using a steam plow on its roadbed in ditching and leveling up the roadbed.   There were some three of four cars besides the engine in the train.   From one of the cars a large beam extended to carry the plow and scraper, and to the end of this beam the plow and scraper were attached.   The plow could be used or the scraper could be used, and the beam revolved so it operated on either side of the train.   They also had an air engine on the train, and several men were engaged on this construction train. The engine pulled or pushed the train to which the plow and scraper were attached.   The construction train began work near the residence of appellees.   Appellees' lot, on which they resided with their deceased son, Howard Abernathy, ran up to the right of way of appellant.   Appellees' house in which they resided was forty feet from the right of

way, and it was fifty feet from the line of their lot to the center of the railroad track. There was no fence which separated the lot of appellees from the right of way. The children could walk right off the yard on the right of way. Appellees had been living on the place from March to the 17th of November, when the injury occurred. The work began at one corner of appellees' yard and continued about eight days. The machinery and apparatus was something new in that town and attracted many small boys and grown people to see it operate. From the time work was commenced till appellees' son was killed, numbers of small boys from 5 to 18 years of age were attracted by the train and machinery, especially before and after school hours, and on Saturdays all day, ranging in numbers from ten to fifty. The boys were permitted by the employes to ride upon and be in and around said train, in the caboose, on the steps, on the flat cars, around the air machinery, in the cab of the engine, on the cow-catcher, along and upon the right of way, and in front of the plow and behind it.

At the time of the accident the train was moving slowly west, pulled by an engine which was backing. There were two pilots on the engine, one in front and the other on the rear of the tender. The pilot on the rear of the tender, as the train was then moving, was obscured from the view of the engineer and fireman by the tender, and from the balance of the crew by both engine and tender. Just before the accident the boy was seen on the pilot attached to the tender by Miss Maggie Lewis, but the employes all testify that they did not see him or know that he was there. He was seen about twenty-five feet from the train by an employe just before the train started, and there is testimony showing that for him to have reached the pilot he would have had to pass near the train for its full length and in view of some of the employes. When the engineer first noticed his peril he was lying across the rail just in front of the back wheels of the tender, and then all possible effort was made to avert the injury.

The employes had no right to permit or invite anyone to ride on that train. The boy was of the average intelligence of boys of his age. He had been frequently told not to go about the train, that he might get hurt or killed, but just in what way he might get hurt or killed was not told him, and he was not of sufficient intelligence and discretion to appreciate the danger that he incurred, and therefore not chargeable with contributory negligence. The employes were negligent in not using proper care to prevent the deceased and other children from being on or about the train. The appellees were not guilty of contributory negligence.

*Conclusions of Law.*—1. Under the facts the trial court was warranted in submitting to the jury for their determination the question whether or not the trainmen had such knowledge of boys frequently being on and about said train "as ought reasonably to induce in their

minds the expectation or apprehension that boys might be found on or about the train at such time as when plaintiff's son was injured;" and if so then it was their duty to to use such care as a person of ordinary prudence would have used under similar circumstances in ascertaining, or trying to ascertain, whether or not boys were then on or about the train and in situations of danger, etc. The principle of discovered danger announced in the Breadow case, 90 Texas, 76, and like cases is not applicable here if, as a matter of fact, boys of immature years and discretion were on or about the train so frequently that persons of ordinary produence would have apprehended danger to them, although the employes at the time did not know deceased was on the train, then it devolved upon the employes to use ordinary care to ascertain whether or not some were on the train and prevent injury. This was an issue under the evidence, and we think it was properly submitted to the jury.

2. The question of the boy's capacity and intelligence to comprehend and appreciate the danger was raised by the evidence. This issue was properly submitted to the jury and the testimony warranted the verdict.

3. The court properly charged on contributory negligence both as to the boy and the parents. The evidence on this issue is sufficient to support the verdict.

4. While the testimony was conflicting on the controverted issues, yet there is sufficient evidence to support the verdict and judgment.

We find no material error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.