This is an action to recover damages for causing the death of the plaintiff's intestate by the negligence of the defendant, as alleged in the complaint. The defendant is a corporation owning a lumber plant and operating logging trains, and was running one of its trains at the time hereinafter mentioned. On or about 15 December, 1910, the deceased, about 10 years old, and her brother, a small boy, were at a water tank on defendant's road near Gentry's Creek, Tenn. The children lived about 4 miles from this place, at Stikesville, N.C. While the children were at the tank the defendant's logging train pulled (145) up and stopped there to get water. The children had seen other children ride on defendant's train and had been permitted to ride themselves, so they asked the fireman to let them ride on the engine, across the mountain, to their home. He gave the permission, and they got on the tailboard of the tender of the engine, a little step used by brakemen in switching. He gave them permission to ride in this position. It was customary to let children ride on the train when they asked to do so. About halfway up the mountain, the logging train went out on a switch-back, a "device" for reversing the engine so as to "grade" the mountain. At this place, the flagman saw the children and spoke to them, but never told them to get off, nor did he tell them that they were in a dangerous position. The engine moved ahead with the children on the tailboard. When the train reached a point about 79 steps from the home of the deceased, her father saw his children on the tailboard and in a dangerous position. He had forbidden the trainmen to permit his children to ride on defendant's trains. The train was in full view of his house all of the way from the place where he saw the children to the place where the little girl was killed. On seeing his children in a dangerous position, he ran out and hailed the fireman and conductor and signaled to them that the children were in a perilous situation, and for them to stop, so that the children could step off. He gave the signal to stop, and continued to halloo and to give signals until the little girl was injured. He knew the right signal, as he had been a track-walker. The fireman and engineer were looking at him, but failed to stop. They could have heard him but failed to stop. They could have heard him, for the son, who was on the tailboard with the deceased, heard his halloo. The engine passed by him, within a few feet of him, and all of the time he was trying to get them to stop and let the children off, but they would not. After the engine had passed by the place for the children to get off, the little girl jumped off or fell off. She fell on the track, the engine ran over her, and from her injuries she died. The fireman, who let them get on the engine, knew where they lived. The fireman could see the *Page 118 
children on the tailboard, and the engineer could also, at the (146) switch. He could have seen the little girl when she fell, if he had been looking. The engine was moving very slowly and he was not attending to his duties at the time. The engine could have been stopped within a foot or 2 feet. It moved 8 or 10 feet after the little girl fell, before it struck her. After it struck her, it dragged her in the wheels for 15 feet or more. When she fell, her brother gave the alarm, but the engine was not stopped until the deceased's brother had taken her out of the wheels by the hair of the head, after the engine had reversed its course to go onto another track.
After hearing the testimony, the court nonsuited the plaintiff, and he appealed.
After stating the case: As this is a nonsuit, we must consider the evidence in the most favorable view for the plaintiff. Beck v.Bank, post, 201, and cases cited. The question is, whether there was any evidence which should have been submitted to the jury, and we are of the opinion that there was. We do not rest our decision of the case upon the ground that the fireman permitted the two children to ride on the engine (Dover v. Manufacturing Co., 157 N.C. 324), but rather upon the ground of there being evidence that the fireman and flagman knew they were children of tender years and immature judgment, and that they were on the tailboard of the tender, an exceedingly dangerous place, and that they were not capable of exercising that degree of care for their safety which a grown person would under the same circumstances. It is their extreme youth and their perilous position which combine to make a case of actionable negligence on the part of the defendant, the want of proper care being the proximate cause of the girl's death. We considered a somewhat similar question in Ferrell v. Cotton Mills,157 N.C. 528, and some of the principles discussed in that case are applicable here. Every person should so use his own property as not to injure another, is an ancient maxim of the law, which has survived in its full vigor to the present time. It was said in Ferrell v.(147) Cotton Mills, supra: "Although the dangerous thing may not be what is termed an attractive nuisance, that is to say, not have especial attraction for children by reason of their childish instincts, yet where it is so left exposed that they are likely to come into contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so *Page 119 
exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them." This principle is substantially the same as that applied in the "turntable cases," R. R. v. Stout, 84 U.S., or 17 Wallace, 657 (21 L.Ed., 745). In the latter case, the following instruction of Judge Dillon to the jury was not only approved, but commended, as an impartial and intelligent statement of the law, all of which will appear by reference to R. R. v. McDonald, 152 U.S. 262
(38 L.Ed., at p. 440), where this charge is given as follows: "The machine in question is part of the defendant's road, and it was lawfully constructed where it was. If the railroad company did not know, and had no good reason to suppose, that children would resort to the turntable to play, or did not know, or had no good reason to suppose, that if they resorted there they would be likely to get injured thereby, then you cannot find a verdict against them. But if the defendants did know, or had good reason to believe, under the circumstances of the case, that the children of the place would resort to the turntable to play, and that if they did they would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence, and would be answerable for damages caused to children by such negligence." We refer especially to the Stout and the McDonald decisions, for the reason that they discuss with great clearness the principles upon which is based the right of recovery in behalf of children in such cases, and cite the principal authorities. We may well add, that if a turntable is a dangerous instrumentality if unlocked or unguarded, surely the tailboard of a backing engine must be. Kramer v. R. R., 127 N.C. 328. Right here we lay out of the case, as a conceded proposition of law, or rather an indisputable one, that all that is required of an infant plaintiff in such a case is that he exercise care and prudence equal (148) to his capacity, or such as is usual among children of his age and supposed intelligence. Murray v. R. R., 93 N.C. 92; R. R. v. Gladman,82 U.S. 401; Bottoms v. R. R., 114 N.C. 699. The child's negligence was a question for the jury under proper instructions.
We, therefore, recur to the further consideration of the main question as to defendant's negligence, and in regard to it, we find that the courts have practically decided this very point, upon facts closely resembling those in this case, and sufficiently so to make their decisions valuable, if not authoritative, precedents. A case much like ours is Ashworth v. R.R., 116 Ga. 635 (59 L.R.A., 592), where the facts and governing principle are thus stated: "The plaintiff was on the running-board of an engine which was moving backwards, and, according to the allegations of the petition, the servants of the defendant company had, as reasonable *Page 120 
persons, sufficient grounds to anticipate his presence upon the engine, and in legal contemplation knew he was there, were aware of his perilous position, and yet took no steps to protect him against his ignorance and inexperience. The allegations of the petition make a case of wanton and willful injury; not willful in the sense of intentional, but willful in the legal sense, growing out of a failure to anticipate the plaintiff's presence and provide against his injury, when it should have been done." The following cases cited by the Court in support of its decision are pointedly applicable to the case at bar: R. R. v. Popp,96 Ky. 99; Thompson v. R. R., 11 Tex. Civ. App. 307 (child was 12 years of age); Tully v. R. R., 2 Pen. (Del.), 537; R. R. v. Abernathy,28 Tex. Civ. App. 613 (child was 10 years old). In those cases or at least some of them, the employees of the railroad company did not know that the children were on the train, although there were circumstances from which they might have anticipated their presence there, and the Court said that "it devolved upon the employees to use ordinary care to ascertain whether or not some were on the train, and prevent injury." (149) But in our case there was direct evidence that some of the employees did know that the little boy and girl were on the tender, and in a very dangerous place. The injury resulted, too, just as the employees might have anticipated, in the exercise of proper forethought. The child became frightened as the engine passed by her home, where she expected to alight from the engine, and she did what was natural for one so young to do under the circumstances, and thereby was mangled and lost her life. An adult, in all probability, would have stayed on the engine until it had stopped and it was safe to alight, but not so with an infant of much less discretion and judgment. She instinctively did what children so often do when alarmed, and sometimes adults — the wrong thing. In this connection, the case of Holmes v. R. R., 207 Mo., at p. 164, is pertinent: "But common experience tells us that a child may be too young and immature to observe the care necessary to his own preservation, and therefore, when a person comes in contact with such a child, if its youth and immaturity are obvious, he is chargeable with knowledge of that fact and he cannot indulge the presumption that the child will do what is necessary to avoid an impending danger. Therefore, one seeing such a child in such a position is guilty of negligence if he does not take into account the facts that it is a child, and regulate his own conduct accordingly. An act in relation to a person of mature years might be free from the imputation of negligence, while an act of like character in view of a child would be blameworthy. Therefore, when the law says to the defendant, although the act of the deceased child contributed with your act to produce the result, yet, because of his youth and immaturity, he *Page 121 
is not adjudged guilty of negligence, it does not charge the defendant with the consequence of the child's conduct, but it does not, for that reason, excuse it for its own negligence." The following cases may be added to those already cited: Biddle v. R. R., 112 Pa. St., 551; Leven v. TractionCo., 194 Pa. St., 156; 201 Pa. St., 58; Brennan v. R. R., 45 Conn. 284;Cook v. Navigation Co., 76 Tex. 353[76 Tex. 353];Davis v. R. R., 92 S.W. 831; Wynn v. R. R., 91 Ga. 344;Construction Co. v. Bostick, 83 S.W. 12; Oil Co.v. Jarrand, 40 S.W. 531.
In R. R., v. Abernathy, supra, the facts were that a boy 10 years old and of ordinary intelligence was told not to go about the train, (150) as he might be killed or hurt, but was not told how it might occur. Just before the accident, he was seen on the pilot of the tender, which was part of a work train, near his father's premises, and in some way, while the train was moving slowly, he was thrown or fell from the pilot, and was killed. It did not appear that the employees of defendant knew that he was there, although there were circumstances from which they might have discerned his dangerous position. The Court held that it was a case for the jury. And so in Biddle v. R. R., supra, it was said, generally, to be very true that extra precautions are not required to guard against the intrusions of trespassers, even though they be children, "but when they do so intrude, and are known to be in an improper place, they must not be so wholly neglected as to endanger their lives or limbs. Any other doctrine would so illy accord with Christian civilization as to render its maintenance impossible. It follows from what we have said that the court below, instead of ordering a peremptory nonsuit, ought to have sent the case to the jury." R. R. v. Burgess, 119 Ala. 555; 72 Am. St., 943. It would serve no good purpose to prolong the discussion of the subject.
The reasons we have given and the authorities cited would seem to be sufficient to show the error in withdrawing this case from the jury and directing a nonsuit. There are other facts and circumstances which entitled the plaintiff to be heard by a jury, which we have not, as yet, noticed. It is in evidence that it was customary for children to ride on the engine or tender, a most dangerous practice. The defendant should exercise more care and prudence in such matters. Besides, when the train approached the father's home, he signaled the engineer and fireman to stop, as he had seen his two children in a dangerous position on the tailboard, and became apprehensive for their safety; but his frantic warning was not heeded, although he was seen, so he says, and should have been heard, so the boy said, by them. This was evidence of negligence to be submitted to the jury. Of course we have considered the case as if the evidence adduced by the plaintiff gives a correct account *Page 122 
of the matter, as we are required to do under the well-established rule, because the jury may have found it to be so if it had been (151) submitted to them. It may be that the defendant will be able to satisfy them, upon all the evidence, that such is not the case, and a very different view of the question may be presented to them. The error of the court consists in not giving the plaintiff the opportunity of having the facts passed upon by the jury, when there was some evidence of negligence.
New trial.