# The East Saginaw City Railway Co. v. August Bohn.

*Street railways: Vehicles: Passengers: Unsafe places.* It is the duty of a street railway company to provide vehicles which insure security to their passengers, and not to suffer them to occupy unsafe places upon such vehicles.

*Contributory negligence: Children: Discretion.* If this duty is neglected, and a passenger is injured, he cannot recover damages of the company if his own neglect of the duty of self-preservation contributed to the injury; but duty can only be predicated of one who has capacity to understand and ability to perform it; and therefore a child not of an age or discretion to understand the danger in riding upon the front platform of a street car, cannot be charged with negligence in so doing.

*Street railways: Children: Parents: Contributory negligence.* Parents have a right to assume that street railway companies furnish conveyances which are reasonably safe, and have regulations which preclude persons from riding in unsafe places upon them: and they cannot, therefore, be charged with negligence in permitting their children to ride on the street cars without escort, if the company consent so to receive them.

*Riding upon front platform: Negligence: Children.* While the company would not be liable to a person of suitable age and discretion who, being warned of the danger in riding upon the front platform of the car, should persist in doing so, yet, in case of a child, lacking such discretion, and to whom, consequently, negligence could not be imputed, it would be the duty of the officers of the company not to stop with a warning, but to compel such child to occupy the proper place in the car.

*Street railways: Children: Negligence: Liability.* Where a child four years of age, in company with his brother, twelve and a half years old, took a street car, and both sat down on the front platform with their feet on the step, and there was no other interference with their riding there except that the conductor claims (which, however, is denied) that when he took their fare he told them to go into the car, and the younger boy, in some way unexplained, got off the car while in motion, and was run over, negligence cannot be imputed either to the parents of the children, in permitting them to take the cars alone ; or to the younger boy ; or to the older boy, without a showing that he had more than the ordinary discretion and judgment of boys of his years, and that he understood the danger and the difficulty of protecting both himself and his brother against it ; but the company was guilty of negligence in permitting the boys thus to ride, and liable in damages for the injury.

*Heard July 17. Decided July 22.*

Error to Saginaw Circuit.

*Sutherland & Wheeler*, for plaintiff in error.

*Frederic L. Eaton* and *Albert Trask*, for defendant in error.

Cooley, J.

The suit in the court below was brought against the railway company on behalf of August Bohn, an infant, to recover damages for an injury done to him by one of the cars of the company, and, as was claimed, through the negligence of its servants. The declaration avers that on the fourth day of August, 1869, the railway company was a carrier of passengers by cars drawn by horses over its track, laid down in certain streets in the city of East Saginaw, and to a certain point in South Saginaw, which cars, as well as the persons who should become passengers upon said railway, were under the power, control and management of certain servants of said company ; that the plaintiff, being then an infant of the age of four years, became a passenger on one of said cars, with the permission and consent of defendant; that he entered upon the front end of said car, and finding the door thereof closed and the way thereto barred and obstructed by trunks, boxes of merchandise and other freight, he (the said plaintiff), with the

consent and permission of said defendant, was seated upon the platform of said car with other passengers then and there being carried by said defendant, and under the care, charge and direction of said defendant, and in that position started upon his journey from a point where Genesee street crosses said track to another point opposite Darmstetter's brewery; that while so seated, the driver of said car, being then and there a servant of said defendant, and having the care and control of such passengers, occupied a part of such platform, and the conductor of said car, being then and there also a servant of said defendant, and having the care, control and management of said car and all persons thereon or about said car, opened said door from the inside thereof, and collected the fare of the passengers upon said platform, and then returned to the inside of said car and closed the door thereof. And plaintiff avers that the said defendant then and there carelessly, negligently and wantonly consented, permitted and required the said plaintiff, while so being transported as aforesaid, to pursue his said journey upon the said platform in a careless, unsafe, dangerous and exposed situation; that before the car reached the end of plaintiff's said journey, he (the plaintiff), while using all due care, diligence and caution, was thrown violently to the ground, by the motion of said car, in such a manner that the wheels of said car passed over his left leg, and broke and injured it in such a manner that amputation thereof became necessary to save the life of said plaintiff.

On the trial it was not disputed that an injury occurred to the plaintiff in the manner and of the nature alleged, and the questions raised were, whether the servants of the defendant were guilty of negligence contributing to the injury, and if so, then whether the plaintiff or those in whose charge he was, in fact or in law, were not also guilty of contributory negligence of a nature and degree which would preclude recovery. To understand the legal questions, it may be advisable to present the several accounts

of the transaction given by the plaintiff's brother, who was
with him at the time,—the plaintiff himself being too young
to be sworn—and the conductor of the car and one passen-
ger.    The driver was not sworn.

The brother, Henry Bohn, testified that at the time of
the injury he was about twelve years and six months old,
and the plaintiff four years and five months; that about
eleven o'clock in the forenoon his mother sent him with a
jug to a store after a gallon of vinegar; the distance
appears to have been about a mile; the plaintiff wanted to
go along, and was at first refused permission, but the
mother afterwards consented, and told the witness that they
should walk down, but might take a street car back, and
gave him money to pay the fare; they went accordingly
and got the vinegar, and returning took a street car, which,
however, was found to be going only a part of the distance,
and they were obliged to get out and wait for another.
When the second car came along, they got upon the front
platform; there was a lot of boxes there piled up, with
trunks on top of them half way to the top of the door;
the driver was on the platform, and a Mr. Randall; the
boys sat down on the platform with their feet on the steps,
and the witness held the jug between his legs; after the
car started the conductor came out to take the fare; he
put his hand on the shoulder of the witness, who looked
up, and seeing what was wanted, paid him six cents; then
the conductor told the driver to let the boys off at the
brewery, and then went back into the car and shut the
door; he said nothing more, and quitted the car right
afterwards; before they got to the brewery plaintiff stood
up to see if they were near home, and just as he went to
sit down the jarring of the car tore away the hand of wit-
ness from plaintiff; witness was not looking at plaintiff at
the time, and when he looked around he was gone; the
driver asked him if his brother fell off, and witness replied,
yes; the driver hit his horses and went right on; witness
asked him to stop, but he did not, and witness then picked

up the jug and jumped off, and found his brother had been run over and one leg crushed.

The evidence of the conductor differs from that of this witness in several important particulars.    He denies that the front platform of the car was occupied by boxes or trunks, though he says there was a basket standing there, and he also says that when he went out on the platform and took the fare from the older boy, he told them to come into the car.    Randall, the passenger who was on the platform with the boys, corroborates the conductor as to the absence of boxes or trunks.    He also claims to have been looking at the little boy at the time of the occurrence, and testifies that he jumped off, and that when the older boy asked the driver to stop and let him off, he checked the speed of his horses, though he did not stop.

This is perhaps a sufficient statement of the evidence given to answer the purpose of presenting the legal points.    The defense insisted that the allegation in the declaration that the plaintiff, when he entered upon the platform, found the door closed and obstructed by boxes, etc., and seated himself on the platform with permission of the company, etc., was material, and must be proved.    The defense also claimed, and requested the judge to charge the jury, that if the plaintiff on the occasion in question rode upon the car with the knowledge and permission of his mother, she knowing that he was attended by no other person than his brother, a youth of the age of twelve or thirteen, and that plaintiff fell off or jumped from the cars voluntarily, or from a want of discretion, and because he was not properly guarded by his attendant, he was not entitled to recover. Also, that if the plaintiff, before the accident, was seated on the platform of the car with his feet on the step and some means of holding himself in his seat by his hands, and that he was in company with an older brother capable of exercising a reasonable discretion for the plaintiff's safety, and that he was safe while thus sitting, from being thrown off the car by its motion, the defendant's servants in charge

of the car were not required to exercise care or oversight to prevent the plaintiff from voluntarily changing his position, and thereby exposing himself to be jostled off the car, or from attempting, with childish indiscretion, to get off the car while in motion. Also, that if from the plaintiff's evidence it is doubtful whether the plaintiff jumped off or fell off from the car, the plaintiff could not recover. Also, that if there were seats inside the car, and plaintiff was seated on the platform by his brother, with the intention to ride there to their destination, and was told by the conductor to come in, and did not, and the accident would not have occurred if they had been in the car, the plaintiff could not recover. These requests and others of like nature were refused.

The requests in effect assume that if the older of the two boys was wanting in discretion for the protection of himself and his brother, it was negligence in the mother to permit the plaintiff to go upon the cars without other attendance; and if the brother had such discretion, then it was negligence in him to seat himself and the plaintiff on the platform as he did; and in either case the defendant would be excused from legal responsibility for the negligence imputed to them, because the injury resulted from the concurrent negligence of the mother or brother, who, for the time, must be regarded as occupying the position of guardian for the plaintiff, and whose negligence, therefore, was in law imputable to the plaintiff himself.

If the railway company at the time had been under no obligation of care or responsibility for the plaintiff as a passenger upon their cars, the question of liability would be very different from the one now presented. But this company hold themselves out as carriers of passengers for all who may come, and provide vehicles which promise reasonable protection and security to those who commit themselves to their care and custody for the purpose of carriage. They do not reject a child because he is young and wanting in discretion, or a person weak or demented, or one physically

incapable of self-protection against the accidents which might result from careless management. This mode of transit, on the other hand, is supposed to be specially adapted to the needs of those classes of community whose physical strength and capacity is least, or whose limited means put the more expensive modes of conveyance beyond their reach. It is unquestionably a great convenience to men of business, in the ready facilities it affords for passing from place to place in response to business calls, but it is not less so to the poor laborer employed at a distance from his home, or to the pupil residing a long way from his place of instruction, or to the child whose parents' necessities compel his being sent upon errands, or to the families of laboring men, who by means thereof are enabled to enjoy occasional holidays in the public parks, or in forest or open fields, which otherwise would only be accessible to them at an expense beyond their means. All these classes quite as much, at least, as those whose circumstances make them more independent, are invited by the railway company to take passage upon their cars; and it cannot be held that a parent is guilty of negligence in permitting a child who lacks the judgment and discretion of an adult person, to accept the invitation, unless the car would be to the child a dangerous conveyance notwithstanding any oversight the company may reasonably be expected to provide. If it is thus dangerous, the question may be a serious one, whether it may not become the duty of the legislature, out of regard to human life, to prohibit by law the reception upon the cars of such children unless attended by parents or guardians. Such a prohibition would go far towards striking a fatal blow at the profits of these companies, inasmuch as the use of their cars by the poorer classes of community would to a great extent be precluded, if escort for children must always be provided.

The privileges of these railway companies are conferred by the state, and it is assumed in granting them that the mode of conveyance they provide is not only convenient,

but is reasonably safe. The state would never grant the corporate privileges on any other supposition, nor would it permit the use of the public streets by persons holding themselves out as common carriers of passengers, whose means of transportation made their invitation to a passenger to take conveyance with them an invitation to danger, and possible mutilation and death. A railway company, for instance, who should propose to carry passengers upon an open platform without seats, would not only, in consideration of the danger attending that mode of conveyance, be denied special privileges in the streets for their vehicles, but it would become the duty of the authorities, from a proper regard to the lives and limbs of its citizens, to prohibit such a constant and dangerous temptation as such vehicles might prove to thoughtless or foolhardy persons. It is not the policy of the law to permit even the most mature and capable persons to run recklessly or unnecessarily into danger; but from the highest considerations of the public good, it seeks to protect every individual citizen, not only against assaults and wrongs at the hands of others, but also against the risks that might spring from his own folly or rashness. The law does not content itself with denying him a remedy against other persons, where, through their concurring negligence, he has suffered an injury, but it seeks to lessen the probabilities of negligent injuries by precautions which those likely to suffer them are required to observe. Our general incorporation acts, and especially those relating to railways, contain many such regulations.

If public policy would forbid the use of open and unseated vehicles for the transportation of passengers, then we are warranted in saying that the railway company, when they suffer their passengers to ride upon the platforms of their cars, which are in like manner, though perhaps not to the same extent, dangerous, are guilty of violating a wholesome rule of public policy, and of a disregard of their duty to the community from which they receive their privileges. They may nevertheless permit this in a great many

cases without incurring pecuniary responsibility, because the persons suffered thus to ride are equally with themselves guilty of a violation of duty, and where the concurrent neglect of the two results in an injury, the law will not suffer the injured party to recover from the other, because to do so would give him compensation for his own default, and remove an important security against the like defaults in the future.

But duty can only be predicated of one who has capacity to understand and ability to perform it.　If the owner of a vehicle which it was dangerous to ride upon should invite a person as capable of understanding the danger as himself, to take passage with him, the latter, if he should accept the invitation, and be injured, would have no remedy, because of his neglect of the duty of self-protection. But if children under the age of discretion to understand the danger should be invited into it in like manner, the carrier could plead no exemption, because upon the child no such duty could rest in such a case, and the law would not be embarrassed with difficulty in fixing the responsibility where alone it should rest.　If the proper guardian of the child should be present and consent, the carrier might, perhaps, be relieved of his responsibility, but this would not be because he was justified by the consent, but because, with fault on both sides, the law will not undertake the task of justly apportioning the consequences according to the culpability.

A railway car, however, is not supposed to be a dangerous vehicle of conveyance to those who take it.　It is a covered conveyance, provided with doors and seats, and passengers are expected to occupy the seats.　A mother who consents to her infant children going upon the cars, is supposed to know that it is a reasonably safe conveyance.　She may also be supposed to know that the proprietors have regulations which preclude persons riding in unsafe positions upon it, and that the persons in charge have authority to enforce these regulations.　She will, therefore, with

reason, expect that her children, if they lack judgment to decide for themselves what the dangerous positions are, will be warned and kept out of them by the authority of those in charge.    Under such circumstances the mother may, with the utmost confidence, intrust her children to the street car, on the supposition that instead of sending them into unusual dangers, she has actually placed them where they will be safer than upon the public streets on foot. She can consequently be guilty of no negligence in permitting them to take the cars by themselves, if they have reached an age which would justify their being suffered in the public streets, and if the railway company have no regulations which will preclude their being received thus unattended.    If they are unsuitable persons to receive and carry without a guardian, the company might doubtless refuse to receive them; but consenting to receive them as passengers, it would become their duty to give all reasonable care and make reasonable provision for their safety.

That the duty of the railway company not to permit persons to ride in unsafe places on their cars is the same, and rests upon the same reasons, with their duty not to make use of vehicles wholly unsafe, appears to me entirely clear.    There are, without doubt, some limitations upon that duty, growing out of the manner in which their business is usually and properly conducted, but it does not become necessary to consider those limitations at any length, in the present case.    Such carriers could not in reason be required to be insurers of their passengers against all dangers, nor, perhaps, to employ a person to keep watch upon their passengers, to protect them against dangers resulting from their own folly or neglect.    Perhaps it is admissible that the driver should be also conductor, in which case he could not be expected to watch against persons falling off the rear platform or crawling out of the window.    If, however, it was dangerous for passengers to stand or sit on the front platform, where the driver himself would be, it would not only be his right and duty to notify any who

might occupy it of the danger, but if they were of an age not to be likely to understand the risk, or able to judge for themselves, or if he knew them to be insane or otherwise unable to exercise discretion, the duty would not be fully performed without an enforcement of proper regulations to compel their occupying positions less exposed.

The conductor in this case claims to have performed his duty when he directed the boys to go into the car. Henry Bohn denies that he was so told; but we may safely believe the conductor, without charging the boy with intentional misstatement, as the noise of the car is always considerable, and the conductor does not seem to have taken any pains to see that his direction was obeyed, or even understood. It is quite possible it was not heard at all. Assuming that it was, the question remains whether by giving it the conductor performed his full duty. I think he did not, unless the older boy was of an age and discretion to justify his being allowed to act and judge both for himself and for his brother, and to take upon himself all consequences. If he had not reached such an age and discretion, the conductor's duty did not stop with the warning, but the warning should have been an order, and either he or the driver should have compelled obedience.

In judging of the measure of responsibility to which the older boy should be held, something more must be considered than merely his age. Some dangers the youngest persons shrink from instinctively, while an appreciation of others only comes from extended observation and experience. A child of four will shudder at the proximity of a precipice, when one of thirteen, to whose knowledge an injury from careless riding upon a street car has never come, will not anticipate danger from any thing apparently so safe. It is within the observation of all travellers and all persons having the management of railway trains, that boys of from eight to fourteen years of age are much more ready to place themselves in exposed positions upon cars, and to jump off and on recklessly, than are persons of mature

years. It is not necessarily to be assumed that they purpose subjecting themselves to danger, but they lack the experience and observation which teach the danger, and without which a man in the full maturity of his intellect might be guilty of a recklessness equal to theirs. At that period of life, too, the childish impulses and propensities are as strong and active as ever, and if notified of a danger, they cannot be expected to keep a consciousness of it present to the mind, or to observe that watchful ward against it which would be looked for in an older person. It would be unreasonable and cruel in the extreme to hold such a child responsible for a prudence and foresight beyond his years, and for a perception and comprehension of dangers which are only learned by experience, or by observation and reflection.

Assuming, however, that a child has reached an age to be properly entrusted with the direction of his own actions, it does not follow that he is fit to take upon himself authority over the actions of others. A child of twelve might ride with entire safety in a position where, though exposed to danger, his strength and agility would be sufficient for his protection, but where it would be quite out of his power to render much assistance in the protection of a helpless person. If, under such circumstances, he should expose himself only and suffer an injury, it might fairly be charged to his own folly; but if he should expose a younger child entrusted to his care, any other person in a position of authority over him would justly be held highly blamable if he did not interfere. To protect another, agility and strength may not be sufficient, but he must have judgment, foresight, and constant watchfulness, so as to anticipate possible dangers, and be prepared with his assistance, however unexpectedly the perils may come. He must have his boyish propensities under control, so as not to let his curiosity, or any thing else, throw him for a moment off his guard. The degree of watchfulness and prudence required would, of course, be proportioned to the

nature and degree of the danger, but it may be laid down as an axiom that whatever is beyond the ordinary judgment and discretion of such a child cannot reasonably be required of him, and consequently his failure to perform it cannot be treated as neglect of duty. The measure of reasonable discretion must be the measure of duty in such a case.

Whether the older boy in this case had reached an age at which it could be said he ought to have understood the danger, and to have kept his brother from it, was the question really at issue. His watchfulness was found, in fact, to be equal to his own protection, but though he kept his brother by his side and his hand upon him, it was not equal to the protection of both. It may safely be assumed of such a boy that he would not appreciate the difficulty of protecting another where he could protect himself, as a person more mature and of more experience would be likely to do, and this fact the conductor and the driver were bound to understand and to act upon. They were bound to know that they were carrying the plaintiff in an exposed place without suitable protection, and their neglect of duty was very obvious and gross in permitting it. We cannot say that the brother was guilty of a like default.

There are, doubtless, some children, even of this tender age, who show a prudence and thoughtfulness, and an ability to guard against dangers, commonly belonging to riper years; and it may therefore be urged that the judge erred in not submitting more distinctly to the jury the question of the actual discretion and judgment of this boy. Such cases, however, are purely exceptional. They are commonly cases of premature maturity, brought about by want, or by the absence of suitable protection, and the consequent necessity for self-protection against rough treatment at the hands of others. It was not claimed that this case was exceptional, and we discover no evidence in the record to show it, unless proof that the boy had been in the habit of riding on the cars could be said to have that tendency.

That experience, unless he had known of accidents from riding in exposed places on the car, would be quite as likely to lead him into a false security as to disclose to him the dangers, and consequently, standing alone, nothing could be predicated upon it. The judge and the jury, I think, had the right to assume that this boy had the ordinary discretion and judgment of boys of his years, and no right to require of him any more. The judge charged the jury that the railway company were required to act towards the plaintiff in the situation in which he was; that is, considering his age and capacity, and the fact that he was there with a brother of the age named. They were not required to use toward him the same care and skill that might have been required had he been alone. They received him as he was, attended by his older brother, and were required to act towards him with that fact in view. The jury, he said, could readily see that possibly less care might be required than if he were there alone. They received him and carried him over their road, in connection with the dangers of passage on that car with the older brother, and they were bound to act towards him just as he was situated. And he further instructed them that if the brother was of an age to have exercised reasonable discretion, and plaintiff was seated where, with the exercise of such discretion in his behalf, he could ride in safety, plaintiff was not entitled to recover, unless the injury resulted wholly from the negligence of the company. This charge appears to me all the defendant had a right to demand.

If it was negligence in the company to suffer the plaintiff to ride on the platform, it is immaterial whether or not he was compelled to ride there by the difficulty of getting into the car. The action is for negligence in carrying him in an exposed and dangerous place on the car, and the negligence was the same whether he was compelled, or only permitted to ride there. The culpability might have been greater in the former case, and it might have been proper

to give heavier damages; but the case is made out when the negligence is established.

The suggestion that the plaintiff is not entitled to recover, if it is doubtful how he got off the cars, has no force. Randall, who was father-in-law to the conductor, testified that he jumped off, but his testimony throughout is exceedingly unsatisfactory, and I think the jury would have been well warranted in concluding that the plaintiff, in rising up from some childish impulse or reason, was thrown off by the motion of the car. This subject was fairly left to the jury on the evidence, and defendant could ask no more.

I find no error in the record, and am of opinion that the judgment should be affirmed, with costs.

The other Justices concurred.