[No. 7838.]

## LOVEJOY V. DENVER & RIO GRANDE RAILROAD COMPANY.

1. MASTER AND SERVANT—*What Master must Anticipate in Employing Servant.* A railway company in employing an engineer is not under duty to an-

ticipate that he may be unduly devoted to little children, and yield to this inclination, to the possible neglect of his duties. (225.)

2. NEGLIGENCE—*Turntable Cases.* The defendant's engineer had taken upon his engine a little boy of five years, and so neglected to care for him that the child fell therefrom, and was seriously injured. The doctrine of the Turntable Cases held inapplicable. (226, 227.)

3. CONTRIBUTORY NEGLIGENCE—*Infant Not Chargeable.* A boy of five years must be presumed unconscious of the danger of being placed upon a locomotive engine, and is not chargeable with contributory negligence if injury results to him. (227.)

4. MASTER AND SERVANT—*Liability of Master for Negligence of Servant.* The master is liable for the neglects of the servant only when they occur while the servant is acting within the scope of his employment. (227, 228.)

5. —— *Railway Engineer.* No matter what may be the character of the train, nor the circumstances under which it is being operated, it is the duty of the engineer to put off his engine, without unnecessary injury to him, any person found thereon who has no right to be there, and especially so in the case of a child not of the age of discretion. (230-234.)

An engineer put upon his engine a boy of five years, and, leaving the child to care for himself, set the train in motion. The child fell and was injured. The railway company was liable. (235, 236.)

Cases involving injury to children while attempting to get upon moving trains without the knowledge of those in charge thereof, distinguished. (237.)

*Error to Denver District Court.* HON. HARRY C. RIDDLE, Judge.

Mr. JOHN A. RUSH, for plaintiff in error.

Mr. E. N. CLARK and Mr. R. G. LUCAS, for defendant in error.

SCOTT, J., delivered the opinion of the court.

The complaint in this case alleged in substance that the defendant operates a spur or branch railroad track running from its main line near the city of Leadville, to the Ibex mining property. That on the day of the accident complained of, the engineer of defendant company was in full charge of the conduct and operation of the defendant's engine and train operated on the said branch or spur of

its road. That there was no conductor for the train, but that the engineer was in full charge thereof. That the engine was coupled to, and engaged in pushing, a string of freight cars, had a tender attached behind, and was then so being operated by the said engineer in the line of his employment. That the latter stopped the engine and cars where the said branch line crossed the public highway, which likewise runs between the city and the Ibex mining property.

It is then alleged that the plaintiff, a boy of five years, with a little brother and sister, approached the engine, when the engineer got down from his cab and called to the plaintiff saying he had a present for him. That the said engineer had taken the plaintiff and his brother and sister on the engine and given them a ride a few days prior. That the engineer asked plaintiff if he wanted to ride on the engine and thereupon lifted him up and into the cab, and then started his engine forward in pursuance of his employment, leaving the plaintiff unguarded and uncared for, and that in some manner the plaintiff fell off the engine, and the wheels of the tender ran over and crushed one of his legs so that it became necessary to have it amputated. The court sustained a demurrer to the complaint upon the ground that it did not state facts sufficient in law to constitute a cause of action.

The plaintiff elected to stand upon his complaint and brings the case here for review.

The acts of the engineer alleged to constitute negligence are: (a) that there was a duty resting upon the engineer in this case, to prevent the child from being placed on the engine; (b) that there was a duty resting on the engineer to safely remove the boy from the engine before starting to operate it; (c) that there was a duty resting on the engineer, after having placed the plaintiff on the engine and not having caused him to be removed therefrom,

to have safely guarded him while the engine was in motion. That the engineer by his neglect and failure to perform all or any one of these duties was guilty of such negligence as will make the defendant liable for the injury.

Other acts of negligence alleged are: (1) that there was a duty resting on the company to use great caution in the selection of an engineer who is careful and competent, and that the defendant did not exercise proper care in selecting the said engineer, and for such reason the defendant is guilty of negligence in this case; (2) that the said engine was a powerful and dangerous instrument, especially attractive to children, and therefore the failure to select a competent engineer was equivalent to negligently leaving such dangerous instrument without guard and in an unsafe condition.

Admitting the duty of the defendant to employ competent and skilled engineers, there is no sufficient allegation in the complaint of the non-observance of such duty, nor is there any allegation at all that the engineer here was not competent or skilled as such. That he may have been unduly kind-hearted and devoted to children, to the possible neglect of a duty as charged here, is not such a matter as may reasonably be foreseen in his employment, conceding his qualifications otherwise.

Neither are we able to see how the turn-table doctrine is applicable to the facts in this case. This doctrine is well stated in the brief of defendant in error to be:

"The leaving or maintaining of a dangerous and attractive machine, or other instrument or agency upon one's premises, under circumstances which naturally tend to attract or allure young children of immature judgment, and to induce them to believe that they are at liberty to enter and handle or play with it, is tantamount to an implied invitation to enter. Hence, a corresponding duty is imposed upon the owner or occupant of the premises to prevent the

intrustion, or to protect from personal injury such children as may be so attracted and thus induced to enter, and who are incapble of appreciating the attending dangers. The doctrine is founded upon the principle that when one sets a temptation before young children under circumstances which in law is equivalent to holding out of an inducement to enter, he must use ordinary care to protect them from harm. It is but applying the general rule that when one induces or invites another upon his premises, he must use ordinary care to avoid injuring him."

The leading, if not the first American case upon this subject, is that of *Railway v. Stout*, 17 Wall 657, 21 L. Ed. 745, which involved an injury to a child by leaving a railroad turntable unlocked, and therefore in an unsafe condition for children who might naturally be attracted thereto. The reason for the rule was stated in that case to be:

"As it was in fact, on this occasion, so it was to be expected that the amusement of boys would have been found in turning this table while they were on it or about it. This could certainly have been prevented by locking the turntable when not in use by the company. It was not shown that this would cause any considerable expense or inconvenience to the defendant. It could probably have been prevented by the repair of a broken latch. This was a heavy catch, which, by dropping it into a socket, prevented the revolution of the table. There had been one on this table weighing some eight or ten pounds, but it had been broken off and had not been replaced. It was proved to have been usual with railroad companies to have upon their turntables a latch or bolt or some similar instrument. The jury may well have believed that if the defendant had incurred the trifling expense of replacing this latch, and had taken the slight trouble of putting it in place, these very small boys would not have taken the pains to lift it out, and thus the whole difficulty would have been avoided. Thus

reasoning, the jury would have reached the conclusion that the defendant had omitted the care and attention that it ought to have given, that it was negligent and that its negligence caused the injury to the plaintiff."

This cannot be well said to apply to the instant case of an engine being then operated and in direct charge and control of defendant's engineer. So that, if the defendant is to be held liable, it must be by reason of the acts and conduct of the engineer so alleged to constitute negligence.

It will be observed that under the allegations of the complaint, the enigneer was in sole charge and control of the engine and train, and for such reason there can be in this case none of those distinctions sometimes indulged in, arising in cases where the train was in charge of a conductor or other train-managing official, and where the injury occurred through the alleged negligence of the engineer alone.

The plaintiff was of that age when he must be presumed to be unconscious of the danger incurred in being placed on the engine, or to be possessed of a judgment to resist the temptation to his childish curiosity, and pleasure, offered by the invitation and act of the engineer. Hence, there can be no contributory negligence, and we have only to determine the question of negligence for which the defendant company may or may not be held.

That the injury occurred by reason of, and was due to the alleged acts of the engineer, is not disputed, but it is argued that in so doing he was not acting within the actual or apparent scope of his authority, and for such reason the defendant is not responsible.

The doctrine in this regard may be said to be as in substance stated by our text writers:

"In order to make a master liable in tort for an injury caused by the wrongful or negligent act of his servant, it must appear that the act was within the actual or apparent scope of the servant's authority; for if the servant was not

acting in the due course of his employment for his master, but in contravention of his duty to him and against his interest, the master is not liable. Addison on Torts, §1809."

"The liability of the master for intentional acts, which constitute legal wrongs, can only arise when that which is done is within the real or apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort, which the master neither directed in fact, nor could have been supposed, from the nature of his employment, to have authorized or expected the servant to do." Cooley on Torts, 635.

"The master is liable for the acts of his servant, not only when they are directed by him, but also when the scope of his employment or trust is such that he has been left at liberty to do while pursuing or attempting to discharge it, the injurious act complained of. It is not merely for the wrongful acts he was directed to do, but for the wrongful acts he was suffered to do, that the master must respond." Cooley on Torts, 534.

But where there is a clear duty of the servant and where he fails or neglects to perform such duty, and such failure results in, and is the proximate cause of an injury, then the master is liable for the negligent acts of his servant.

In the case of *Euting v Chicago & N. W. R. Co.*, 116 Wis. 13, 92 N. W. 358, 60 L. R. A. 158, 96 Am. St. 936, the principle that a master is not responsible for the torts of a servant when the servant has departed from his employment, as distinguished from the question as to whether he had departed from, or neglected his duty in the line of employment, is so clearly stated as to justify the insertion of that portion of the opinion here. In that case the court stated:

"So the situation to be considered upon the motion is: The defendant placed these dangerous explosives in the

custody of its servant, to be placed on the track in certain
contingencies as a warning to approaching trains. The
servant, however, placed one on the track when not con-
templated by the employer, evidently for his own amuse-
ment, and in dangerous proximity to third persons, and
moved the engine over it, causing it to explode, and inflict
injury on one of such persons; and the question is whether
a verdict for the injured person against the principal can
be sustained under such circumstances. We think this
question must be answered in the affirmative. The principle
that a master is not responsible for the torts of his servant
when the servant has departed from his employment is well
understood. If this principle were as easy of application as
it is of statement, we should have little difficulty; but, like
many another simple and plain principle, its application to
concrete facts is sometimes very difficult. The question,
generally, is whether the servant has departed from his
employment, or whether he has departed from or neglected
a duty in the line of that employment. In the first case the
principal is not responsible for his acts, and in the second
case he is. Applying the principle to the present case, sup-
posing that the jury had found that the engineer placed the
torpedo on the track, it seems quite plain that a verdict for
the plaintiff might be sustained. The engineer's duty was to
operate the engine; to take care of the torpedoes, and see
that they were used only at proper times and places. The
company had placed in his charge these dangerous agencies,
and authorized him to use them at proper times. In placing
one of them upon the tracks as he did, he was doing what the
company had directly authorized him to do; but he was not
doing it at the time or place authorized by the master. He
was not beyond the scope of his employment, but he was
wilfully or wantonly violating a duty resulting from his
employment, namely, his duty to safely keep and properly
use the torpedoes. There have been many cases involving

the application of this principle, and they cannot be said to be entirely harmonious; but the principle above stated is believed to be substantiated by the great weight of authority. The doctrine is quite well stated in *Pittsburgh C. & St. L. R. Co. v. Shields,* 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, 21 Am. St. 840, as follows:

'A servant may depart from his employment without making his master liable for his negligence when outside of the employment of his master, and he so departs whenever he goes beyond the scope of his employment and engages in affairs of his own, but he cannot depart from the duty intrusted to him when that duty regards the rights of others in respect to the employment of dangerous instruments by the master in the prosecution of his business, without making the master liable for the consequences; for the first step in that direction is a breach of the duty intrusted to him by the master, and his negligence in this regard becomes the negligence of the master."

That a railroad engine being operated as was the one in question, was an unsafe and dangerous place for a child of tender years, is not only alleged in the complaint, but must be assumed as a matter of common knowledge.

Counsel contends that the act of the engineer in placing the child upon the engine alone was the proximate cause of the injury, and that such act was without the scope of his authority, therefore no liability attached.

Even if we concede for the moment that there was no liability upon the part of the defendant for the mere act of placing the child on the engine, yet even under the authority of cases so holding, the child was on the engine, in a concededly dangerous position, with the positive knowledge of the engineer, who then placed his engine in motion. Under such circumstances it was his duty to put the boy safely off the engine, which if he had done, the accident would in all human probability have been avoided.

This is nothing more than the application of the doctrine of the duty to exercise reasonable care. The reason for the rule, and the distinction made in this class of cases is well stated in the case of *C., M. & St. P. Ry. v. West,* 125 Ill. 320, 17 N. E. 788, 8 Am. St. 380, as follows:

"Conceding, as must be done, the engineer invited plaintiff to ride with him on his engine, he was acting without the scope of any duty he owed to his employer, and had any injury come to plaintiff on account of that act of the engineer itself, whether negligently done or not, the master would be liable. If that were all there is of this case, it is plain the judgment would be contrary to law, and should be set aside. The action is not based on any such ground. It is sought to recover for a very different reason. It is because when plaintiff was on the engine, no matter how he got there, it was the duty of the engineer to put him off, and in doing so he was obliged to observe reasonable care. The rules of the company, in evidence, shows it was unlawful for any one, other than certain employes, to ride upon the engine. Should any stranger get upon the engine, it would clearly be the duty of the engineer to put him off, and in doing so he would be acting within the general scope of his employment, and if, in the discharge of that duty, he negligently or wantonly injured such person, the master would be liable. In this case it may be conceded plaintiff was wrongfully on the engine, whether he was there by the invitation of the engineer or by his own wrongful conduct, and it was the duty of the engineer to cause him to get off. At the time of the accident plaintiff was about seven years old, and, of course, was too young to observe much, if any, care for his personal safety. It was the duty of the engineer to observe care, even if plaintiff was in the wrong in getting upon the engine. It was admitted by counsel at the trial, 'the engineer has no right to throw a boy off or to kick him off.' That concession is in harmony with the law that makes it

his duty to observe reasonable care, under the circum-
stances, in putting a person off the engine, even when
wrongfully there."

This is but to apply the same reasoning upon which is
based the rule of last clear chance, though not to the same
extent as in the uniform cases in this court, for the peril of
the plaintiff here was within the actual knowledge and pres-
ence of the engineer, with the undisputed opportunity and
power to have avoided the accident. The present case can
be no different in principle than if the plaintiff had been
between the rails in front of the engine, and plainly visible
to the engineer when he put the engine in motion. There
may be a difference in degree of danger, or in the certainty
of injury, but there is obvious peril in either case.

The right to recovery will scarcely be questioned under
the circumstances stated. *Alabama G. S. Ry*, 119 Ala. 555,
25 So. 251, 72 Am. St. 943; *Burg v. C., R. I. & P. Ry.*, 90 Ia.
106, 57 N. W. 680, 48 Am. St. 419.

In *M., K. & T. Ry Co. v. Tonahill*, (Tex. Civ. Ap.), 54
S. W. 419, a boy eleven or twelve years old and of immature
judgment and discretion, in an attempt to board a train
while moving out of a depot, fell and was injured. It was
held to be the duty of the employees of the company to use
ordinary care to prevent the attempt, and that the company
was liable.

So, where a boy ten years old and of ordinary intelli-
gence was injured while riding on the pilot of the engine of
a work train, it was held that the employees had no right
to permit any one to ride on the train, and that they were
guilty of negligence in failing to use care to prevent children
from riding thereon. *St. L. S. W. Ry. Co. v. Abernathy*, 28
Tex. Civ. Ap. 613, 68 S. W. 539.

In the case of an injury to a boy six or seven years of
age, it was held in *Burke v. Ellis*, 105 Tenn. 702, 58 S. W.
855, that:

"It is negligence *per se* to permit a child of such tender years to climb on and ride upon a car loaded with loose earth, that is liable to slip and throw the child off at any time. In such case the statement of the facts makes out a case of negligence, and the opinion of witnesses is not needed to show that such an act is negligence. An open car loaded with earth is such an inducement as would naturally lead children into danger, and it was negligence not to keep them away from the cars under such circumstances."

In *Harris v. Southern Ry. Co.* (Ky.), 76 S. W. 151, in the case of a boy thirteen years of age, it was said:

"If appellant was directed or invited by the engineer and fireman, or either of them, to go upon the tender and shovel coal for their convenience, and they started the train to Louisville, and after it was moving they directed him to get off the train while it was in motion, and under such circumstances he attempted to alight from the train, and as a result thereof he received his injury, the appellee was responsible, unless at the time he attempted to alight, the speed of the train made the danger to him so imminent and obvious that an ordinarily prudent person of his age and discretion would not have incurred the risk."

In the case of a child four years of age being permitted to ride in an exposed and dangerous place upon a street car, *East Saginaw City R. Co. v. Bohn,* 27 Mich. 503, Judge Cooley writing the opinion, it was said of the duty of a railroad company:

"That the duty of the railway company not to permit persons to ride in unsafe places on their cars is the same, and rests upon the same reasons, with their duty not to make use of vehicles wholly unsafe, appears to me entirely clear."

It was further said in that case:

"If, however, it was dangerous for passengers to stand or sit on the front platform, where the driver himself would

be, it would not only be his right and duty to notify any who might occupy it of the danger, but if they were of an age not to be likely to understand the risk, or able to judge for themselves, or if he knew them to be insane or otherwise unable to exercise discretion, the duty would not be fully performed without an enforcement of proper regulations to compel their occupying positions less exposed."

And again, the court said:

"The action is for negligence in carrying him in an exposed and dangerous place on the car, and the negligence was the same whether he was compelled, or only permitted to ride there."

The principle upon which these cases rest has been fully upheld by this court in the case of *Pueblo Street Railway Co. v. Sherman,* 25 Colo. 114, 53 Pac. 322, 71 Am. St. 116, wherein it was held to be negligence for the motorman of a street car to permit a boy thirteen years old, who is not a passenger, to ride upon the car for amusement, and to alight while the car is in motion, for the purpose of turning the trolley, and that the company is liable for such negligence. It was there said of the duty of the motorman in charge of the car to exercise reasonable care, regardless of instructions and regardless of the fact that, generally speaking, the acts of the motorman were not within the scope of his actual or apparent authority:

"The motorman was charged with the management and control of the car; it was his special duty, regardless of instructions, to exercise reasonable care and diligence in operating it so as to prevent injury to those with whom the relation of carrier and passenger did not exist. The evidence discloses that appellee was permitted to ride upon the car for a period of something over two hours; allowed to alight while the car was still in motion, for the purpose of turning the trolley; he was not upon the car as a passenger, but there because the permission granted to ride and turn

the trolley afforded him amusement, which would be naturally attractive to one of his years. To allow children to make a playground of a moving street car, or convert that vehicle when so moving into an article of amusement, is certainly exposing them to serious, if not fatal, injuries, and it is as much the duty of the employees of a street car company to exercise reasonable care and diligence in preventing those not capable of appreciating the danger to which they would be exposed on account of their childish proclivities to amuse themselves in the manner appellee did, as it is their duty to prevent injury to persons of like age exposed to injuries in other ways from the same source. Had the motorman not permitted appellee to ride upon the car merely for amusement, alight therefrom recklessly while in motion, but, on the contrary, had exercised a reasonable degree of care in preventing him from so doing, the injury might not have occurred."

Whatever may be said of the act of the engineer in the instant case, as it relates to the invitation to the plaintiff to come upon the engine, the fact remains that such engineer, under the allegations of the complaint, permitted him to remain in that dangerous position, and proceeded to put his engine and train in motion without effort to protect him from danger, which it was his clear duty to do.

In the well considered case of *Whitehead v. St. L. I. M. Ry. Co.*, 99 Mo. 263, 11 S. W. Rep. 751, 6 L. R. A. 409, where a boy of fourteen years of age was injured, through the negligence of the trainmen, and while the boy was riding in the caboose of a freight train, forbidden to carry passengers, but with the acquiescence of the conductor, though the lad was not a passenger for pay, the court said:

"Now, in this case the conductor had entire charge of the train. In its management he acted for and represented the defendant. It was a part of his duties to see that persons did not ride upon it, either with or without the payment

of fare. How, therefore, can it be said his act in allowing the boy to ride upon the train was beyond or outside the scope of his employment? It was an act directly within the line of his duty. He made breach of his duty toward his master, but that is a matter of no consequence here. To all outward appearance, as well as in point of fact, he was master of the train. The defendant, therefore, cannot escape liability in this case on the ground that the conductor had no authority to permit the boy to ride on the train. It also follows from what has been said, as well as from the authorities cited, that the defendant did owe a duty to the boy. Owed a duty to him even on the theory that he was not in the full sense of the term a passenger."

As supporting the rule as to duty, and in holding the defendant company to the exercise of reasonable care, in similar cases, the following authorities may be cited: 23 Am. & Eng. Enc. 748; *Galveston, Harrisburg & San Antonio Ry. Co. v. V. F. Zantzinger et al.*, 98 Tex. 64, 53 S. W. 379, 47 L. R. A. 282, 77 Am. St. 829; *Pittsburg, A. & M. Ry. Co. v. Caldwell*, 74 Pac. 421; *K. C., Ft. S. & G. Ry. Co. v. Keely*, 36 Kan. 655, 14 Pac. 172, 59 Am. Rep. 596; *Wilton v. Middlesex R. R. Co.*, 107 Mass. 108, 9 Am. Rep. 11; *Brennan v. Fair Haven & W. Ry. Co.*, 45 Conn. 284, 29 Am. Rep. 679; *Buck v. People's Street Ry. Co., etc.*, 108 Mo. 179, 18 S. W. 1090; *New Jersey Traction Co. v. Danbeach*, 57 N. J. L. 463, 31 Atl. 1038; *Metropolitan Street R. R. Co. v. Moore*, 83 Ga. 452, 10 S. E. 730; *Chicago, M. & St. P. Ry. Co. v. West*, 125 Ill. 320, 17 N. E. 788, 8 Am. St. 380; *Britt v. Eddy*, 115 Mo. 596, 22 S. W. 488; *Bucci v. Waterman*, 25 R. I. 125, 54 Atl. 1059; *Biddle v. Bestonville M. & F. R. Co.*, 112 Pa. 551, 4 Atl. 485; *Stone Adm. v. C. M. & St. P. Ry. Co.*, 88 Wis. 98, 59 N. W. 457.

It is urged by the defendant company that a railroad company has the right to carry passengers and freight on different trains, and when such provision is made, the con-

ductor and brakemen have no implied authority to receive passengers upon freight trains.

The rule must be conceded, but it can have no application here. It is not claimed or pretended that the plaintiff was a passenger. The same duty is upon the engineer, whether of a passenger train, freight train, or where under any circumstances the engine is being operated, to keep persons without right off his engine, and to safely put them off if he in time discovers them there, and particularly so if such persons are children not of the age of discretion.

Counsel for defendant cite many cases wherein railroad companies have been held not liable in cases of injury to boys by climbing on moving trains, without the permission or knowledge of the employees of the company. But the reason assigned for this rule, in substantially all these cases, is clearly stated in the case of *Wilson v. Atchison, Topeka & S. F. Ry. Co.*, 66 Kas. 183, 71 Pac. 282, to be:

"They (trains) pass and repass through every community with such frequency, the peril of jumping upon and from moving trains is so well understood, and the task of keeping boys from stealing rides and hopping upon cars of trains slowly moving through towns or railroads yards, is so impracticable and burdensome as to make the rule invoked inapplicable. So to guard trains as to keep boys entirely away from them would require a host of employees, and fix a standard of responsibility which has never received countenance in this state. Such a standard of duty and responsibility cannot be invented and applied by the court without legislation."

No such reason exists in this case. No extra employe was required, but, on the contrary, the engineer, who was the master of the train and in personal charge of the engine, with his own hands placed the boy on the engine, and knowingly left him to shift for himself, while the engine was put in motion.

It will be observed that in the Kansas cases, as in many such cases, the boy was found to be an intelligent boy, twelve years of age, who was familiar with the running of trains, and who knew and appreciated the danger of getting on and off a moving train, and that he was a conscious trespasser and responsible for his own negligence and injury.

It is true that cases are cited which apparently hold to a contrary doctrine from that here announced, but we must decline to follow them. They are not founded in either sound reason or justice. It is the universal rule that railroad corporations are held to the exercise of due care upon the part of their servants, and they should not be permitted to palpably violate this duty, and then hide behind the too often misconstructed and misapplied rule as to scope of authority.

The acts of the engineer as alleged in this case, constitute but one continuous transaction. He got down off his engine, induced the boy, unconscious of his danger, to permit him to place him on the engine, left him unguarded thereon and proceeded to put the engine in motion in the regular course of his employment, with the resulting accident. This was inexcusable negligence upon the part of the servant while engaged in the performance of his duties, however kindly may have been his purpose to please and amuse the child.

The judgment is reversed with instruction to overrule the demurrer, and to proceed with the trial of the case in accordance with the views herein expressed.

GABBERT, C. J. and CARRIGUES, J., concur.